OPINION
{¶ 1} This timely appeal comes for consideration upon the record in the trial court and the parties' briefs. Defendant-Appellant, Kevin Green, appeals the decision of the Mahoning County Court of Common Pleas denying both his Motion for a New Trial and request for an evidentiary hearing. Because Green provided testimony from an eyewitness that constitutes newly discovered evidence and could arguably establish his innocence of two of the crimes of which he was convicted, his claim has merit. Although this evidence may not be enough in and of itself to say that Green deserves a new trial, it warrants an evidentiary hearing.
 Facts {¶ 2} This case stems from the September 17, 1999, beating, kidnapping and murder of 16-year old John Allen. Although Allen's body was discovered in Youngstown's Lincoln Park, the attack that led to his death began in an apartment building on Market Street. Green frequented and sold drugs at that location.
 {¶ 3} At some point during that evening, Green arrived at the apartment building expecting to meet a girlfriend. When he arrived he was greeted by several acquaintances, but she was not among them. One of those acquaintances was William Robinson. Robinson advised Green that John Allen, who was also in the building that night, was planning to rob him. According to the State, a confrontation ensued during which Green, along with Robinson, Jeron Hunter and Lamar Logan, began beating Allen, bound him with a telephone cord, shoved a sock in his mouth, stuffed him into the trunk of a car, and transported him to Lincoln Park. They then removed the young man from the vehicle and shot him six times in the back of the head.
 {¶ 4} A grand jury subsequently indicted Green on aggravated murder and kidnapping charges. At trial, the State relied largely on the testimony of Robinson and the crime's other participants. Green maintained his innocence, arguing that he did not participate in Allen's beating, and even attempted to stop it, at one point physically restraining Robinson in an unsuccessful effort to prevent him from beating Allen further. According to Green, when Robinson told him about Allen's intentions, Green approached Allen and the two calmly discussed the situation. Green satisfied himself that Allen was not planning to rob him, and everything seemed fine until Allen saw Robinson. Evidently enraged that Robinson snitched on him to Green, Allen physically confronted Robinson.
 {¶ 5} When it appeared that Allen, who, at 5' 2" and 125 lbs., was unlikely to prevail, Green claims he tried to stop the fight. Robinson pulled out a gun and Green withdrew. Robinson continued to beat Allen and was joined by Logan and Hunter. Eventually, Green gave up and decided to head home.
 {¶ 6} A jogger discovered Allen's remains the next morning. When Green learned that Allen died, he left town, because, according to Green, "snitches get stitches." Nevertheless, when he learned that a warrant had been issued for his arrest, he returned to the area and surrendered to police. The jury acquitted Green on the aggravated murder charge but found him guilty of kidnapping and complicity in Allen's murder.
 {¶ 7} On February 27, 2001, the trial court sentenced Green to an aggregate term of thirty years imprisonment. In an Opinion released on June 13, 2003, this Court affirmed that judgment in all respects. On August 30, 2001, Green, acting pro se, filed a petition to vacate or set aside his sentence, seeking post-conviction relief under R.C. 2953.21. Once again this court affirmed his conviction. Green has now filed a motion for a new trial and has requested an evidentiary hearing. The trial court has denied both requests.
 {¶ 8} As his sole assignment of error, Green claims:
 {¶ 9} "The trial court abused its discretion in denying the Appellant's Motion for New Trial."
 {¶ 10} Green claims that it was error for the trial court to deny his motion without first conducting an evidentiary hearing in light of the newly discovered evidence Green provided the court. We agree.
 {¶ 11} The grant or denial of a motion for new trial based on newly discovered evidence is within the sound discretion of the trial court, and will only be reversed upon an abuse of discretion. State v. Schiebel (1990), 55 Ohio St.3d 71, paragraph one of the syllabus. Likewise, a trial court has broad discretion to determine whether it is necessary to hold an evidentiary hearing on the motion for new trial. E.g., State v.Smith (1986), 30 Ohio App.3d 138.
 {¶ 12} Newly discovered evidence must satisfy several criteria to justify granting a new trial. Specifically, the trial court must consider whether:
 {¶ 13} "[T]he new evidence (1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence." State v. Petro (1947), 148 Ohio St. 505, syllabus.
 {¶ 14} Green attached several documents to his motion for new trial. However, Green limits his arguments on appeal to discussing two of the items; namely, the recanted testimony of State's witness Clarence Bowens and an affidavit from alleged eye witness, Rasheeda Lewis which states that she saw Green leave the building before the kidnapping occurred.
 {¶ 15} The evidence submitted with respect to Bowens could not be considered as newly discovered evidence as it simply relates back to a videotaped statement that Bowens had previously given to the police. Bowens letter, which was also sent to the trial court, states:
 {¶ 16} "Your Honor,
 {¶ 17} I think it's unfair what was done with lucky, I told y'all he left earlier from the apartments. that it was Jeron and the guy with the Braids that took John John Allen through my apartment, Not Lucky, Kevin Greene. I even told y'all on tape that. Why doesn't the tape showed at trial? Why did y'all make me lie on lucky, Because my life was in jeopardy at trial? Couldn't y'all see I was scared? Do you know what his buddies did to me? They Beat me bad and threw me off the porch, All because I didn't know where lucky was At. I tried to tell them lucky didn't do it. They beat me worser. Y'all should have played that tape I made, it is safer than continuing risking people's life. I didn't want to come to court, but I would've went to jail if I didn't. So because I had to and all John-John's family was there. I had to either change my story or get beaten up again. Y'all like to put people's life in Jeopardy, but this time y'all got the wrong guy doing life. Lucky is innocent. He argued with John Allen and nothing more, He left.
 {¶ 18} "I am asking that y'all please look at the tape I made again. It is self explanatory. Lucky is innocent, and let him go. here is an affidavit, saying he's innocent and asking that instead of risking people's life; why didn't or why don't you use my tape to Represent me to get Lucky Back. If I can be protected I will testify at trial, and I hope its in front of John's people Again, This Ain't Right, Kevin Greene isn't guilty, Let him go.
 {¶ 19} "Please look at my tape Again. I sent Kevin Greene a copy of this."
 {¶ 20} The issue of this videotape has come up on more than one occasion throughout the post-trial proceedings in this case. It has been raised in his petition for post-conviction relief and in his motion to reopen his appeal. Accordingly, Green cannot now claim that Bowen's letter stating that the videotape should be played is anything more than cumulative evidence. Thus, the trial court did not err by refusing to grant an evidentiary hearing on those grounds. However, the affidavit provided by Lewis did warrant the grant of an evidentiary hearing. The affidavit states:
 {¶ 21} "My name is Rasheeda Lewis, I stayed with Rhonda Mitchell and her daughter at the 1515 Market Street apartment. The reason for this affidavit is I had to tell the truth. I was there at the apartment that night that John Allen was kidnapped and beaten. I saw who tied him up and carried him through Uncle Clarence's apartment. It was not Kevin Green. The day the detective came and arrested Jeron Hunter at the apartment, I was there but I was too scared to get involved because of all the threats. The detectives asked me did I know what's going on and I said no but I actually did but was too scared. I was in the bedroom with Rhonda's daughter, who was asleep. When all the commotion took place, I was peeking out the bedroom window and saw the guy with the braids with guns out and he made Jay help him tie up little John. I saw Kevin Green run out the door saying he did not want nothing to do with it. Then after the guy with the braids and Jay tied him up, the guy with the braids put something in John Allen's pocket. The guy with the braids and Jay picked up John Allen and left. I ran up to Rhonda's front door, peeked out and saw them take John through Uncle Clarence's apartment. It was Jay and the guy with the braids. Kevin Green was not with them, he was long gone. I snuck out the front door and went to the side of the building and being nosy, I saw Jay and the guy with the braids put John in a car and pull off. It was only them two. I was going to come forward but after what they did to Uncle Clarence, throwing him over the porch, I was too scared. But I no longer feel good about Kevin Green doing time for what he did not do. I will testify at a trial. I had to come forward. I just didn't want my name on the T.V. or in the newspaper. Little John Allen's family will hurt me next, I already told them in the beginning that Kevin Green did not have nothing to do with it. They did not want to hear me and threatened my life if I spoke out. I no longer live in Youngstown so if you give him a new trial, I can testify on his behalf and hurry up and leave back out. I will not be done like John's people did Uncle Clarence Brown. Please give that boy another chance at trial; he didn't do anything. I should have been come forward but fear hendered me."
 {¶ 22} The State challenges whether this is in fact newly discovered evidence arguing that this witness could have been discovered much earlier since she was interviewed by the police and was a resident of those apartments. However, she states in her affidavit that she didn't admit to knowing what had transpired because she was afraid of what might happen to her. This testimony is consistent with the fact that Bowens was allegedly thrown off of his balcony and the fact that at least one co-defendant, Jeron Hunter, has signed an affidavit stating that he lied about Green's involvement in the crime and would testify on his behalf at a new trial.
 {¶ 23} Lewis' statement does not merely impeach testimony from the trial; it directly contradicts testimony given by Green's co-defendants, which notably were all given deals by the prosecution for their testimony. More specifically, if Green did not get into the car and drive off with the other co-defendants, then he probably couldn't be held responsible for the kidnapping.
 {¶ 24} The State disagrees arguing that this statement does not "cut against the balance of the facts giving rise to the kidnapping conviction." However, if this witness took the stand at trial and was believed, it is quite possible that Green could be acquitted. Lewis' testimony would be that, although Green may have been involved in the fight, he left the scene when the acts constituting kidnapping had begun.
 {¶ 25} The State further contends that Lewis' statement does nothing to explain away the fact that Green procured a gun for the commission of the murder. However, a review of the trial transcript reveals that co-defendant Robinson gave Green his own gun prior to the start of the scuffle and then asked for it back. Notably, Robinson gets confused on the stand and first testifies that he didn't know where Green got the gun and guessed he got it from "Little John" but then later testifies that it was his. We cannot say that momentarily handling a gun constitutes complicity to murder.
 {¶ 26} Notably, evidence that, if believed, would establish a defendant's innocence, may not be discredited on its face. Statev. Wright (1990), 67 Ohio App.3d 827, 831, 588 N.E.2d 930. Faced with such evidence, a trial court "must afford the movant an opportunity to present evidence at a hearing in support of the motion and affidavit before electing whether to grant or to deny the motion." Id. at 831-832.
 {¶ 27} Since Lewis' testimony could potentially establish Green's lack of involvement in both the murder and the kidnapping, the affidavit warrants an evidentiary hearing so that the trial court can listen to the witness testify and then determine whether she is credible. If after holding the hearing the trial court is convinced that the testimony is self serving or appears to be manufactured simply to obtain a new trial for Green, then at that point we could not say it was an abuse of discretion for the trial court to deny Green a new trial.
 {¶ 28} Accordingly, the judgment of the trial court is reversed and this cause is remanded for further proceedings.
Donofrio, P.J., concurs.
Vukovich, J., concurs.