OPINION
{¶ 1} Defendant-appellant Clinton Perdue appeals the decision of the Mahoning County Common Pleas Court, denying his motion for a new trial. The issue before us is whether the trial court abused its discretion in determining that a new trial based upon alleged newly discovered evidence was not warranted. For the following reasons, the judgment of the trial court is affirmed.
 STATEMENT OF THE CASE {¶ 2} In September 1988, two people were killed and one person was seriously wounded in a shooting at Cassandra Fant's apartment in Youngstown. Appellant was indicted for this incident. Also indicted were Guillaume Chism, Ira Bray and Gary Austin. One of the state's main witnesses against appellant was Cassandra Fant.
 {¶ 3} After his jury trial in 1990, appellant was convicted of two counts of aggravated murder, two counts of aggravated robbery and one count of attempted aggravated murder, all with firearm specifications. Appellant received two life sentences, two sentences of ten to twenty-five years, one sentence of seven to twenty-five years and four three-year sentences. This court affirmed appellant's conviction in State v. Perdue
(Dec. 30, 1993), Mahoning App. No. 90CA18, unreported, discretionary appeal not allowed, (1994), 69 Ohio St.3d 1439.
 {¶ 4} In the meantime, Ira Bray pled guilty to his part in the shootings. Guillaume Chism was convicted by a jury for attempted aggravated murder and two counts of aggravated robbery, but he was acquitted of the two counts of aggravated murder. Gary Austin fled the state, avoiding apprehension for approximately ten years. In October 1998, Gary Austin was finally tried for his part in the shootings. Ira Bray and Guillaume Chism testified at that trial, as did Cassandra Fant and Bridgette Butler, Cassandra Fant's neighbor. Thereafter, the jury acquitted Gary Austin of all charges.
 {¶ 5} Appellant filed a motion for leave to file a delayed motion for a new trial pursuant to Crim.R. 33(B) on the grounds of newly discovered evidence under Crim.R. 33(A)(6). Appellant focused on the testimony of Cassandra Fant. He claimed that her testimony at the recent Gary Austin trial was different than it was at appellant's trial. He alleged that she now placed Gene Davis, a person who was apparently interviewed by police and then released, outside the apartment with a gun, which was the role they previously ascribed to appellant. He noted that he was unavoidably prevented from discovering such evidence because she did not change her testimony until Gary Austin's trial which occurred barely three months prior to the filing of this motion. In order to establish his claim of changed testimony, appellant filed a motion for production of the transcript of the Gary Austin trial at the state's expense.
 {¶ 6} In support of his motion, appellant also attached affidavits from two of his alleged co-conspirators. Guillaume Chism's affidavit stated that he had recently testified in the Gary Austin trial that the only responsible parties for the murders and the attempted murder were himself, Ira Bray, and Gene Davis. He continued that Gary Austin's trial was the first time in ten years that he admitted that appellant took no part in the murders or the attempted murder.
 {¶ 7} Ira Bray also signed an affidavit on February 12, 1999, which stated that the statements he made to the police before pleading to his role in the murders and the attempted murder "wrongfully involved" appellant. He said that he was not permitted to withdraw his statements before his guilty plea. He concluded that he testified in the Gary Austin trial that he, Guillaume Chism, and Gene Davis were the only conspirators taking part in the murders and the attempted murder.
 {¶ 8} The trial court overruled appellant's motion for a transcript, and then, denied his motion for a new trial. The trial court relied on its memory of the Gary Austin trial to find that none of the six prongs necessary to grant a new trial apply.
 {¶ 9} In the appeal of that decision, this court found that appellant established his entitlement to the portions of the Gary Austin trial transcript containing the testimony of Cassandra Fant and Bridget Butler (who was also alleged to have changed her testimony in the Gary Austin trial, but whose testimony appellant is no longer concerned with in this appeal). We held that the trial court failed to review the testimony of these witnesses from appellant's 1990 trial and compare it to their testimony at Gary Austin's 1998 trial. We also stated that the trial court could not rely on its memory of these witnesses' testimony in a case against a different defendant or this court would have nothing to review. Thus, we reversed and remanded for partial production of the Gary Austin transcript and for consideration of the testimony of the witnesses from both transcripts in combination with the affidavits of appellant's codefendants. State v. Perdue (Dec. 18, 2000), 7th Dist. No. 99CA156.
 {¶ 10} On remand, the trial court ordered the transcripts and appointed counsel for appellant. Appellant and his counsel both supplemented his original new trial motion, adding citations to appellant's trial transcript and the Gary Austin transcript. The state filed a response to appellant's motion for a new trial on June 15, 2004.
 {¶ 11} On July 30, 2004, after many continuances and delays, the trial court denied appellant's motion for new trial. The court opined that there was not a strong probability that the result would be different if a new trial were granted. The court stated that many of the statements relied upon by appellant were not true inconsistencies. As for the other statements, the court found that, if anything, the alleged inconsistencies in testimony actually make the case against appellant even stronger. With relation to the affidavits, the court pointed out that the affidavits are not unequivocal in establishing that appellant did not participate and that they are written by friends who have been convicted of murder and/or attempted murder.
 PREMATURE APPEAL AND APPELLANT'S RELATED ARGUMENT {¶ 12} Attached to the state's June 15, 2004 response to appellant's motion for a new trial was a proposed judgment entry as per local practice. When appellant received the state's response, he mistakenly believed that this judgment entry was entered by the court. This entry was not signed by the court and was not file-stamped. Still, appellant filed pro se notice of appeal on June 24, 2004. His counsel filed a reply to the state's response thereafter.
 {¶ 13} Although the trial court did eventually use the state's proposed judgment entry, that signed entry was not filed until July 30, 2004. Thus, appellant's appeal was premature. We have previously stated that we will treat the notice of appeal as being filed immediately after the July 30, 2004 entry. Perdue v. Judge Cronin, 7th Dist. No. 02CA188,2004-Ohio-4816, ¶ 4. Thus, we find no problems relative to the timeliness of the appeal.
 {¶ 14} However, appellant is still confused about the effect of the entry proposed by the state on June 15 and the one signed and filed by the court on July 30. The second branch of appellant's argument on appeal complains that the trial court must have been predisposed to deny his motion and must not have followed our instructions on reviewing the case because the trial court denied his motion on the same day the state filed its response, giving him no time to reply as per the agreed schedule of filings.
 {¶ 15} As stated above, appellant's counsel filed a reply on July 8, 2004, and the trial court's entry was not filed until July 30, 2004. This can be seen in the docket and in the accompanying filings. Appellant misinterpreted the proposed entry attached to the state's June 15, 2004 response. That entry was neither signed by the judge nor file-stamped. Contrary to appellant's suggestions, proposed entries are not inherently suspect. They are common and appreciated at times. Sending a copy to the opposing party is part of the local practice procedures. As such, appellant's arguments concerning the proposed entry and the timing of the court's entry are without merit. We thus continue to address the merits of this appeal.
 LAW ON NEW TRIAL FOR NEWLY DISCOVERED EVIDENCE {¶ 16} The decision to grant a new trial on the grounds of newly discovered evidence falls within the trial court's sound discretion.State v. LaMar, 95 Ohio St.3d 181, 2002-Ohio-2128, ¶ 85. At the very least, the new evidence must disclose a strong probability that it will change the result if a new trial is granted and must not be merely cumulative. Id. citing State v. Petro (1947), 148 Ohio St. 505.
 {¶ 17} The six factors originally set forth in Petro for deciding these types of new trial motions are as follows: (1) the evidence discloses a strong probability that it will change the result if a new trial is granted; (2) the evidence has been discovered since the trial; (3) the evidence could not in the exercise of due diligence have been discovered before trial; (4) the evidence is material to the issues; (5) the evidence is not merely cumulative to former evidence; and (6) the evidence does not merely impeach or contradict the former evidence.Petro, 148 Ohio St. at syllabus.
 {¶ 18} This court has held that where the newly discovered evidence is recantation by a main prosecution witness, the trial court must determine which of the contradicting testimonies of the recanting witness is credible. State v. Willard (Jan. 10, 1991), 7th Dist. No. 88C57, 89C59, citing Toledo v. Easterling (1985), 26 Ohio App.3d 59, 60. If the trial court determines the recantation is believable, the trial court must then determine whether the recanted testimony would have materially affected the outcome of trial. Id.
 {¶ 19} Merely because an important witness recants, the defendant is not per se entitled to a new trial. Id. See, also, State v. Walker
(1995), 101 Ohio App.3d 433, 435 (where the Eighth District noted that even if a victim recants his claims, a new trial is not necessitated); State v. Pirman (1994), 94 Ohio App.3d 203, 209 (where the Eleventh District held that the trial court did not abuse its discretion in placing greater weight on the original trial testimony than on a recantation). The determination is one for the trial court, whose exercise of discretion will not be overturned absent a clear and manifest abuse. Willard, 7th Dist. Nos. 88C57, 89C59. See, also, State v.Tijuerina (1994), 99 Ohio App.3d 7, 12 (where the Third District held that the trial court can dismiss the victim's recanting as false). In fact, the trial court also has discretion to determine whether the later confession of another person is credible and would change the outcome of the defendant's trial. State v. Pasco (Sept. 10, 1987), 7th Dist. No. 82C40, 83C28.
 ASSIGNMENT OF ERROR {¶ 20} Appellant's sole assignment of error contends that the trial court abused its discretion in evaluating Cassandra Fant's testimony from both appellant's and Gary Austin's trials and in determining that the new testimony would not materially affect the outcome if a new trial were granted. Appellant urges that the court abused its discretion in finding that the six-pronged new trial test did not work in his favor. Appellant basically characterizes Cassandra Fant's testimony in the Gary Austin trial as a recantation in that he claims that she now places Gene Davis where she previously placed appellant.
 {¶ 21} In appellant's trial, Cassandra Fant stated that just before she escaped out her front door, she saw three men, Gary Austin, Ira Bray, and Guillaume Chism, enter through the back door with small guns. (Perdue Tr. 122). She ran next door and called 911. She called 911 again after hearing shots fired. She then looked out the window and saw appellant Clinton Perdue coming down her back steps with a long gun. (Perdue Tr. 135, 137). She also saw Gene Davis without a shirt on in the backyard of the apartment. When asked if she saw a gun in the hands of Gene Davis, Cassandra Fant responded, "Oh, I don't remember. I don't remember." (Perdue Tr. 150). The state then prompted, "You didn't see any long guns in his hands?" However, the defense successfully objected to this question.
 {¶ 22} In Gary Austin's trial, she testified that she saw four men, Gary Austin, Ira Bray, Guillaume Chism, and appellant Clinton Perdue, enter through the back door with guns. (Austin Tr. 28). She also testified that when she looked out the neighbor's window after calling police for the second time, she saw Gene Davis in the backyard with a shotgun. (Austin Tr. 41). She also saw appellant coming down her back steps. On cross-examination, she was asked if the four entered with handguns, and she responded affirmatively. (Austin Tr. 93-94). Defense counsel then asked how she could explain that a victim was shot with a shotgun if Gene Davis had the shotgun outside. (Tr. 94). She explained, "I did not notice how big the gun was or how little the guns was. They had guns. A gun is a gun to me. Back then anyway." (Tr. 95).
 {¶ 23} Cassandra Fant's testimony in the two trials is separated by almost nine years. It would be unlikely that her testimony would be exact. Moreover, some of appellant's contentions are not inconsistencies. Rather, much of the testimony is merely cumulative of her prior testimony, just stated in different ways due to different questions being asked of her for different reasons and the fact of the passage of time.
 {¶ 24} At both trials, Cassandra Fant placed Gene Davis in her backyard. The first time she could not remember if he had a long gun, but the second time she did remember this fact.
 {¶ 25} Although she now states that she saw appellant enter her house while she was still in it and she previously claimed to see only three men enter, her prior testimony still essentially placed appellant in her house because she saw him leaving her house via the back stairs minutes after the shots were fired. Moreover, her newer testimony still reveals that she watched appellant leave her apartment via the back steps. (Austin Tr. 98).
 {¶ 26} As the state points out, she was not asked at the Austin trial if appellant was seen leaving with a gun or what kind of gun he was leaving with. Just because she did not offer that appellant left her back door with a long gun or some other gun does not mean that he did not do so or that her testimony has changed on this subject.
 {¶ 27} Appellant describes Cassandra Fant's testimony as revealing role confusion. However, it is clear that she did and still does distinguish between appellant and Gene Davis. The court was permitted to find her prior testimony the most accurate as being closer in time. In such case, there would be no need to determine the second prong of the recantation test, which is whether the recantation would materially alter the result of a new trial.
 {¶ 28} Nevertheless, even if her newer testimony is true, then she saw appellant enter her house with a gun before she escaped. Cassandra Fant's new testimony does not exculpate appellant. His conviction was not premised on any inferences that he shot all the victims. Aiding and abetting merely requires the state prove that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal. State v. Johnson (2001),93 Ohio St.3d 240, 245-246. Participation in criminal intent may be inferred from the circumstances surrounding the crime, including presence, companionship and conduct before and after the offense is committed. Id. at 245, 246. Under Cassandra Fant's allegedly "new" version, appellant's aiding and abetting conviction would still stand. Thus, the trial court could rationally find that there is not a strong probability that the result would be different if a new trial were granted.
 {¶ 29} In fact, her more recent testimony corroborates the testimony of an eyewitness to the shootings, the attempted murder victim. This surviving victim testified that four, not three, men entered the apartment through the back door. (Perdue Tr. 65). He stated that all four men were armed. (Perdue Tr. 68). He disclosed that one of the gunmen was referred to as "Ray Ray" during the incident. (Perdue Tr. 67-68). Testimony from others confirmed that this was appellant's nickname. Additionally, there was testimony that appellant was with Gary Austin and Guillaume Chism in the hours before the shooting and was with all the suspects after the shooting. There was also testimony that appellant was arrested in a hotel room with jewelry belonging to a victim. (Perdue Tr. 342-343, 400, 403, 405).
 {¶ 30} Appellant also refers to prior inconsistencies in Cassandra Fant's statements to police compared to her testimony at appellant's trial. However, her failure to initially accuse appellant was already covered before the jury in appellant's trial. It is not newly discovered evidence and does not corroborate the new testimony in the least.
 {¶ 31} As for the affidavits of Guillaume Chism and Ira Bray, these were not proffered as newly discovered evidence per se but were used to bolster the need for a new trial based upon the newly discovered evidence of Cassandra Fant's allegedly altered testimony. The affidavits do not unequivocally relieve appellant of criminal liability. They do not mention the robbery charges. Even if appellant did not actually shoot a victim, he would not be exonerated. He was tried not only as a principal but also as an aider and abettor.
 {¶ 32} The state submitted documents from the Department of Corrections establishing that appellant, Ira Bray and Guillaume Chism were all in the same prison during the time period that these affidavits were written. The state used this to demonstrate opportunity for collusion and motive. Other evidence showed that the three were friends prior to the shootings and retreated to the same residence after the shootings. One can reasonably infer a strong motive to lie to help the one most likely to receive a new trial and the one sentenced to the longest time in prison.
 {¶ 33} We previously noted that an admission to a crime by an accomplice convicted nine years ago is viewed with great suspicion and is strictly scrutinized. Perdue, 7th Dist. No. 99CA156, citing State v.Bradley (1995), 101 Ohio App.3d 752, 758-759. As aforementioned, besides Ms. Fant, the attempted murder victim also testified that four gunmen entered. Thus, a rational fact-finder could dispose of the affidavits of Ira Bray and Guillaume Chism as untrue since they swear only three participated. It is not unreasonable, arbitrary, or unconscionable for the trial court to determine that the affidavits of two convicted codefendants and friends are untrue or that they fail to realize the legal import of aiding and abetting, regardless of who actually fired the guns or whose bullets actually hit a victim.
 {¶ 34} For the foregoing reasons, the judgment of the trial court is hereby affirmed.
Waite, J., concurs. DeGenaro, J., concurs.