The STATE of Ohio, Appellee,

v.

BROWN, Appellant.

[Cite as *State v. Brown*, 186 Ohio App.3d 309, 2010-Ohio-405.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 10 MA 17.

Decided Feb. 2, 2010.

</div>

Paul J. Gains, Mahoning County Prosecuting Attorney, and Ralph M. Rivera, Assistant Prosecuting Attorney, for appellee.

Timothy Young, Ohio Public Defender, Pamela Prude–Smithers, Chief Counsel, Death Penalty Division, and Rachel Troutman, Assistant Public Defender, for appellant.

WAITE, Judge.

{¶ 1} Appellant, Mark Brown, has filed an appeal of the denial of his motion for a new trial. Appellant was convicted of aggravated murder for the 1994 deaths of Isam Salman and Hayder Al Turk in Youngstown, Ohio. Appellant was sentenced to death in connection with the death of Salman on February 28, 1996. After his execution date was set, he filed a motion for new trial, alleging that two witnesses to the murders gave false testimony at trial. After a full hearing on the merits on January 15 and 19, 2010, the trial court denied the motion for new trial. This appeal followed on January 22, 2010. After thoroughly considering the briefs of the parties, transcripts, and records of the trial court proceedings, including the original trial proceedings in 1996, we affirm the judgment of the trial court in denying the motion for new trial.

Case History

{¶ 2} On the evening of January 28, 1994, the Youngstown Police Department responded to the report of a robbery at the Midway Market in Youngstown. Inside the market, the police found two men who had been shot and killed. The victims were identified as storeowner Isam Salman and employee Hayder Al Turk. Appellant was arrested for the crime on February 3, 1994. When appellant was arrested, the police retrieved a 9 mm Glock semiautomatic firearm from under the couch cushion in the front room of appellant's home. The gun was matched at trial to shell casings that were found at the scene of the crime.

{¶ 3} Appellant was charged with four counts of aggravated murder with death-penalty specifications, along with aggravated robbery and having a weapon while under a disability. The evidentiary phase of appellant's trial began on January 30, 1996. A number of eyewitnesses testified at trial, including two juveniles, Myzelle Arrington and Marcus Clark.

{¶ 4} Arrington testified at trial that on the night of January 28, 1994, he was at Kenny Dotson's house in Youngstown with some friends. Later on that night, he and some friends walked to the Midway Market to buy some snacks. He testified that Marcus Clark and Terrence Thomas accompanied him to the Midway Market. While they were in the market, two other young men who had been at Dotson's house entered the store. These were identified as appellant and Allen Thomas. Arrington made his purchases and left, and then stopped to talk to Jerry Granberry and Antwaine McMeans. Arrington testified that he saw appellant and Thomas exit the store and return to their car. He then saw appellant go back into the store. Arrington saw appellant reach for something. He then heard gunshots and ran away from the store. Later, he and the others returned to Dotson's house, where he observed appellant loading the clip of a 9 mm weapon. He further testified that police detectives never promised him anything in exchange for his testimony and that the juvenile prosecutor never questioned him about the January 28, 1994 shootings.

{¶ 5} Marcus Clark testified that he was also at Dotson's house on January 28, 1994, along with appellant, Thomas, Arrington, and a number of others. During the evening, he walked to the Midway Market with his friends. After they came out of the store, he saw appellant and Thomas enter the store and come out again. He saw appellant go to a car, put on some type of mask, and reenter the store. Clark heard approximately six gunshots. He ran back to Dotson's house. He testified that appellant and Thomas returned to Dotson's house as well. Clark saw appellant wiping a 9 mm weapon at Dotson's house.

{¶ 6} During cross-examination of Clark, he was questioned about false or varying statements he had given to the police about the shootings. He previously told the police that he was two blocks away from the store when he heard the

first shot; that Thomas was the person who had the gun and that he stuck the gun in his pants; that Thomas was the one who wiped blood off the gun; and that he heard Thomas say, "Damn, I think I killed him." He also told police that Thomas said, "[I]f anybody snitches on him, he'd kill them." In correcting and changing his story, Clark testified that many aspects of his story told to the police were not true, and he was adamant that any previous indication he had given that he witnessed the crime from some distance from the Midway Market was a lie because he "was at the store."

{¶ 7} Appellant testified at trial. He admitted shooting Al Turk, but denied shooting Salman. He testified that Thomas was with him during the shootings and that Thomas took the gun from him after Al Turk was shot. This testimony contradicted a sworn statement given by appellant to the police that he shot one of the men but could not recall whether he shot the other.

{¶ 8} On February 7, 1996, the jury found appellant guilty of counts one and two of the indictment, aggravated murder with prior calculation and design, and the accompanying firearm specifications. He was found not guilty of the remaining counts of aggravated murder and aggravated robbery. On February 24, 1996, the jury returned its verdict on the penalty phase of the proceedings. The jury recommended the death sentence for the killing of Isam Salman and life imprisonment for the killing of Hayder Al Turk. On February 28, 1996, the trial court sentenced appellant to death for the killing of Salman and life imprisonment without eligibility for parole for 30 years for the killing of Al Turk.

{¶ 9} Appellant filed a direct appeal to this court. We affirmed his conviction and sentence, which were further affirmed by the Ohio Supreme Court. State v. Brown (Jan. 30, 2001), 7th Dist. No. 96 C.A. 56, 2001 WL 103958; affirmed, 100 Ohio St.3d 51, 2003-Ohio-5059, 796 N.E.2d 506. The United States Supreme Court denied certiorari on March 1, 2004. Brown v. Ohio (2004), 540 U.S. 1224, 124 S.Ct. 1516, 158 L.Ed.2d 162. Appellant filed an App.R. 26(B) application to reopen his direct appeal with this court, which was denied on August 15, 2001. Appellant did not further appeal this decision.

{¶ 10} Appellant filed a motion for postconviction relief in the Mahoning County Court of Common Pleas on April 13, 1998. The trial court denied the petition, and we affirmed the trial court's decision on June 30, 2002. State v. Brown, 7th Dist. No. 01 CA 229, 2003-Ohio-3551, 2003 WL 21518723, not accepted for review, 101 Ohio St.3d 1420, 2004-Ohio-123, 802 N.E.2d 153, certiorari denied, Brown v. Ohio (2004), 542 U.S. 924, 124 S.Ct. 2880, 159 L.Ed.2d 783.

{¶ 11} On August 26, 2004, appellant filed a petition for writ of habeas corpus in the United States District Court for the Northern District of Ohio, pursuant to Section 2254, Title 28, U.S.Code. On March 3, 2006, the court denied the petition, but granted a certificate of appealability as to one issue. Brown v. Bradshaw

(Mar. 3, 2006), N.D.Ohio No. 4:04CV1727, 2006 WL 533405. The Sixth Circuit Court of Appeals denied certiorari on September 17, 2008. *Brown v. Bradshaw* (C.A.6, 2008), 531 F.3d 433, 435, certiorari denied (2009), —— U.S. ——, 129 S.Ct. 1617, 173 L.Ed.2d 1002.

{¶ 12} On June 17, 2009, the Ohio Supreme Court ordered that appellant's death sentence be carried out on February 4, 2010.

{¶ 13} Appellant's application for clemency was denied on January 13, 2010.

{¶ 14} On December 14, 2009, appellant filed a motion for new trial based on newly discovered evidence, along with a motion for leave to file a motion for new trial. Appellant claimed that two witnesses who had testified at trial, Myzelle Arrington and Marcus Clark, were prepared to recant their trial testimony. Appellant also wished to introduce a letter from Arrington delivered to the Mahoning County Prosecutor's Office on May 8, 1995, that purportedly requested preferential treatment in a pending juvenile-court case in exchange for his testimony in appellant's trial. Clark was prepared to testify that he was inside the Midway Market at the time of the shootings and that Allen Thomas shot Salman. Appellant also intended to introduce the testimony of Jerry Granberry, as well as an expert forensics witness, Gary Rini, to corroborate Arrington's and Clark's new testimony. The state responded to appellant's motion on December 22, 2009. A hearing was held on January 15 and 19, 2010.

{¶ 15} On January 20, 2010, the trial court vacated its previous order on the motion for leave to file a motion for new trial, and in the alternative, denied the motion on the merits. This appeal followed on January 22, 2010.

{¶ 16} On December 29, 2009, appellant filed a motion for stay of execution with the Ohio Supreme Court. Appellant supplemented the motion on January 27, 2010. The motion for stay was denied on February 1, 2010.

### Final Appealable Order

{¶ 17} The trial court's denial of a motion for new trial based on newly discovered evidence is a final, appealable order. *State v. Workman,* 12th Dist. No. CA2002–12–302, 2003-Ohio-4242, 2003 WL 21904825, ¶ 8; *State v. Brooks* (Aug. 5, 1999), 8th Dist. No. 75522, 1999 WL 588241.

### Standard of Review for Motion for New Trial

{¶ 18} The decision to grant a new trial based upon grounds of newly discovered evidence, pursuant to Crim.R. 33(A)(6), falls within the sound discretion of the trial court. *State v. LaMar,* 95 Ohio St.3d 181, 2002-Ohio-2128, 767 N.E.2d 166. The new evidence must convey a strong probability that it will change the result if a new trial is granted, and the evidence must not be merely

cumulative. *State v. Perdue*, 7th Dist. No. 04 MA 119, 2005-Ohio-2703, 2005 WL 1300782, ¶ 16. The burden is on the petitioner to establish this strong probability of a different result. *State v. Holmes*, 9th Dist. No. 05CA008711, 2006-Ohio-1310, 2006 WL 709100, ¶ 15, citing *State v. Luckett* (2001), 144 Ohio App.3d 648, 661, 761 N.E.2d 105.

{¶ 19} "To warrant the granting of a motion for a new trial in a criminal case, based on the ground of newly discovered evidence, it must be shown that the new evidence (1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence. (*State v. Lopa*, 96 Ohio St. 410, 117 N.E. 319, approved and followed.)" *State v. Petro* (1947), 148 Ohio St. 505, 36 O.O. 165, 76 N.E.2d 370, syllabus.

{¶ 20} Merely because an important witness recants, the defendant is not per se entitled to a new trial. *Perdue*, 2005-Ohio-2703, 2005 WL 1300782, at ¶ 19. If the newly discovered evidence is a recantation by a main prosecution witness, the trial court must determine which of the contradicting testimonies of the recanting witness is credible. *State v. Willard* (Jan. 10, 1991), 7th Dist. Nos. 88C57 and 89C59, 1991 WL 1568, citing *Toledo v. Easterling* (1985), 26 Ohio App.3d 59, 60, 26 OBR 233, 498 N.E.2d 198. The trial court must make two determinations: "(1) which of the contradictory testimony offered by the recanting witness is credible and true, and if the recanted testimony is to be believed; (2) would the evidence materially affect the outcome of the trial?" *Easterling* at 62, 26 OBR 233, 498 N.E.2d 198. "Newly discovered evidence must do more than merely impeach or contradict evidence at trial, and there must be some compelling reason to accept a recantation over testimony given at trial." *State v. Fortson*, 8th Dist. No. 82545, 2003-Ohio-5387, 2003 WL 22312206, ¶ 13. "[N]ewly discovered evidence which purportedly recants testimony given at trial is 'looked upon with the utmost suspicion.'" *State v. Germany* (Sept. 30, 1993), 8th Dist. No. 63568, 1993 WL 389577, *6, quoting *United States v. Lewis* (C.A.6, 1964), 338 F.2d 137, 139. "Recanting affidavits and witnesses are viewed with extreme suspicion because the witness, by making contradictory statements, either lied at trial, or in the current testimony, or both times." *State v. Gray*, 8th Dist. No. 92646, 2010-Ohio-11, 2010 WL 27872, ¶ 29, citing *State v. Jones*, 10th Dist. No. 06AP–62, 2006-Ohio-5953, 2006 WL 3240659, ¶ 25, and *United States v. Earles* (N.D.Iowa, 1997), 983 F.Supp. 1236, 1248.

{¶ 21} The decision of the trial court will not be reversed absent a clear and manifest abuse of discretion. *State v. Latimer* (July 27, 1983), 3d Dist. No. 7–82–5, 1983 WL 7309, *2; *Perdue*, 7th Dist. No. 04 MA 119, 2005-Ohio-2703, 2005 WL

1300782, ¶ 19. An abuse of discretion connotes more than a mere error of law or an error in judgment. It implies an arbitrary, unreasonable, or unconscionable attitude on the part of the trial court. *State v. Keenan* (1998), 81 Ohio St.3d 133, 689 N.E.2d 929. When there is competent and credible evidence supporting a trial court's decision, an appellate court should not substitute its judgment for that of the trial court. *State v. Schiebel* (1990), 55 Ohio St.3d 71, 564 N.E.2d 54. " 'The granting of a motion for a new trial upon the ground named [newly discovered evidence] is necessarily committed to the wise discretion of the court, and a court of error cannot reverse, unless there has been a gross abuse of that discretion; and whether that discretion has been abused must be disclosed from the entire record.' " *Petro,* 148 Ohio St. at 507–508, 36 O.O. 165, 76 N.E.2d 370, quoting *Lopa,* 96 Ohio St. at 411, 117 N.E. 319.

{¶ 22} A motion for new trial based on newly discovered evidence must also be timely filed. Crim.R. 33(B) states: "Motions for new trial on account of newly discovered evidence shall be filed within one hundred twenty days after the day upon which the verdict was rendered, or the decision of the court where trial by jury has been waived. If it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from the discovery of the evidence upon which he must rely, such motion shall be filed within seven days from an order of the court finding that he was unavoidably prevented from discovering the evidence within the one hundred twenty day period."

{¶ 23} To seek a new trial more than 120 days after the verdict based on new evidence, a petitioner "must first file a motion for leave, showing by 'clear and convincing proof that he has been unavoidably prevented from filing a motion in a timely fashion.' " *State v. Parker,* 178 Ohio App.3d 574, 2008-Ohio-5178, 899 N.E.2d 183, ¶ 16, quoting *State v. Morgan,* 3d Dist. No. 17–05–26, 2006-Ohio-145, 2006 WL 93108, ¶ 7. " '[A] party is unavoidably prevented from filing a motion for new trial if the party had no knowledge of the existence of the ground supporting the motion for new trial and could not have learned of the existence of that ground within the time prescribed for filing the motion for new trial in the exercise of reasonable diligence.' " Id., quoting *State v. Walden* (1984), 19 Ohio App.3d 141, 145–146, 483 N.E.2d 859.

{¶ 24} While Crim.R. 33(B) does not provide a specific time limit in which defendants must file a motion for leave to file a delayed motion for new trial, many courts have required defendants to file such a motion within a reasonable time after discovering the evidence. *State v. Griffith,* 11th Dist. No. 2005–T–0038, 2006-Ohio-2935, 2006 WL 1585435, at ¶ 15; see also *State v. Stansberry* (Oct. 9, 1997), 8th Dist. No. 71004, 1997 WL 626063; *State v. Newell,* 8th Dist. No. 84525, 2004-Ohio-6917, 2004 WL 2931000, at ¶ 16; *State v. Willis,* 6th Dist.

No. L–06–1244, 2007-Ohio-3959, 2007 WL 2216953, at ¶ 20; *State v. Berry*, 10th Dist. No. 06AP–803, 2007-Ohio-2244, 2007 WL 1377036, at ¶ 37.

{¶ 25} Appellant's assignments of error will be taken out of order for the purpose of clarity.

## FOURTH ASSIGNMENT OF ERROR

{¶ 26} "The trial court abused its discretion in finding that Brown's motions were not timely filed."

{¶ 27} Appellant's motion for new trial is predicated upon a letter he received from Arrington on November 16, 2003. In the letter, Arrington informed appellant that Arrington had fabricated his testimony at appellant's murder trial in exchange for favorable treatment from the prosecutor's office, which he received in both pending and future juvenile cases.

{¶ 28} Recognizing that a motion for new trial would be untimely, appellant filed a motion seeking leave to file a delayed motion for new trial. The trial court granted appellant's motion for leave and conducted an evidentiary hearing on the motion for new trial.

{¶ 29} Then, in its judgment entry, the trial court relied on the 2003 letter to appellant from Arrington to conclude that appellant's motion for new trial was not filed within a reasonable time after he received the letter. Thus, the trial court denied the motion for new trial and vacated its judgment entry granting the motion for leave to file his delayed new-trial motion.

{¶ 30} Appellant argues that he would have provided an explanation for his failure to timely pursue his motion for new trial at the hearing; however, the trial court had already granted his motion for leave to file a delayed motion. Appellant relies on a statement in a separate motion before the trial court, in which he stated that he was "prepared to present arguments to excuse his failure to raise his claims earlier," in order to demonstrate that he would have adduced that evidence had he been given the opportunity. Appellant asserts that the trial court strictly limited the testimony at the hearing on the motion for new trial to his claims as to newly discovered evidence.

{¶ 31} Based upon the exigency of this matter, and because the record is incomplete as to the facts supporting appellant's motion for leave to file a delayed motion for new trial through no fault of appellant's, we will assume arguendo that the motion was timely. Because the trial court proceeded to a merits hearing as to his newly discovered evidence claim, and the matter can be addressed as to that claim, appellant's fourth assignment of error is moot.

## SECOND ASSIGNMENT OF ERROR

{¶ 32} "The trial court erred in denying appellant's motion for a new trial based on newly discovered evidence that was in the possession of the state and never disclosed to the defense until recently."

{¶ 33} Appellant's second assignment of error is premised upon another letter penned by Arrington. In a letter written to then Mahoning County Prosecutor, James Philomena, dated May 8, 1995, Arrington requested intervention by the prosecutor's office in a juvenile case in exchange for his testimony at appellant's trial. Arrington first expresses his desire to testify against appellant but then claims that he fears for himself and his family. Arrington asks Philomena to talk to Judge James McNally, the juvenile court judge at the time, in order to request early release from his detention center on behalf of Arrington, who was serving a six-month sentence on a receiving-stolen-property charge. The letter concludes, "So if you can help me I can help you. But if you can't help me well thanks for trying and I will help you anyway."

{¶ 34} Contrary to appellant's characterization of the letter, the letter itself reveals no intention on the part of Arrington to fabricate testimony or to refuse to testify in the event that he does not receive favorable treatment from the juvenile court. At the hearing on the motion for new trial, Arrington conceded that Philomena never responded to the letter and that he did not receive early release.

{¶ 35} An appellate court reviewing a trial court's resolution of a motion for a new trial based upon *Brady v. Maryland* (1963), 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215, utilizes a due-process analysis rather than the abuse-of-discretion analysis used for motions for new trial made pursuant to Crim.R. 33. *State v. Johnston* (1988), 39 Ohio St.3d 48, 59, 529 N.E.2d 898. Due process requires that the prosecution provide defendants with any evidence that is favorable to them whenever that evidence is material either to their guilt or punishment. *Brady* at 87, 83 S.Ct. 1194, 10 L.Ed.2d 215.

{¶ 36} In determining materiality, the relevant question "is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Kyles v. Whitley* (1995), 514 U.S. 419, 434, 115 S.Ct. 1555, 131 L.Ed.2d 490. *Brady* applies when a prosecutor fails to disclose evidence that the defense might have used to impeach a state's witness by showing bias or interest. *United States v. Bagley* (1985), 473 U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481. Thus, the rule set forth in *Brady* is violated when the evidence that was not disclosed "could reasonably be taken to put the whole case in such a different light as to

undermine confidence in the verdict." *Kyles* at 435, 115 S.Ct. 1555, 131 L.Ed.2d 490.

{¶ 37} As discussed more fully in our later analysis of appellant's first assignment of error, Arrington's testimony in no way implicated appellant in the shooting of Salman. As a matter of fact, his allegedly fabricated trial testimony actually corroborated appellant's testimony at trial. Insofar as Arrington's testimony did not implicate appellant as having committed the murder of Salman, we find that any failure on the part of the state to provide Arrington's letter to appellant's trial counsel was not error. Accordingly, appellant's second assignment of error is overruled.

### THIRD ASSIGNMENT OF ERROR

{¶ 38} "The trial court abused its discretion when it refused to allow the testimony of corroborative witnesses because appellant could not establish that he was unavoidably prevented from discovering them at the time of trial."

{¶ 39} The trial court declined to hear the testimony of Jerry Granberry and Gary Rini at the hearing on the motion for new trial. The trial court found that the testimony of Granberry and Rini did not constitute new evidence, but, instead, would be offered to solely bolster the credibility of the "new" testimony of Arrington and Clark. The admission of evidence is left to the discretion of the trial court and will be reviewed on an abuse-of-discretion basis. *State v. Awkal* (1996), 76 Ohio St.3d 324, 667 N.E.2d 960.

{¶ 40} At a hearing conducted on January 19, 2010, appellant's counsel proffered the proposed testimony of both witnesses. According to the proffer, Granberry would testify that he and McMeans were standing outside the Midway Market at the time of the shootings. He would testify that Arrington and Clark were not standing outside the store, and, therefore, could not have witnessed anything that occurred inside the store. The state argued that Granberry's testimony is not newly discovered evidence. Granberry's name was mentioned numerous times in the police reports, and the state subpoenaed Granberry for trial but did not call him as a witness.

{¶ 41} According to the proffer, Rini's testimony would be offered to corroborate and bolster Clark's testimony at the hearing for new trial that he actually saw Thomas shoot Salman with his own gun. At the original trial, Michael Roberts, a forensic scientist at the Bureau of Criminal Investigation, provided expert testimony that the shell casings collected at the scene were from a single gun. However, Roberts testified that he could not conclude that the bullets were from a single gun, due to the nature of the type of weapon used in the shooting. He further testified that no one in the field had been able to match a bullet and a

gun from that particular manufacturer. Roberts was able to conclude that the bullets were all fired from a "9mm Glock-style gun."

{¶ 42} Rini would challenge Roberts's findings and would testify that it had not been conclusively proven at trial that both victims were killed by the same gun. The state argued that proposed expert testimony, like the testimony of Granberry, could have been offered at trial, but was not offered because while appellant testified that Thomas killed Salman, appellant claimed that Thomas used appellant's gun.

{¶ 43} The question before the trial court was not necessarily that this evidence was itself newly discovered, but that it served to support the importance of the evidence that appellant does claim is "newly discovered": the recanted testimony of Arrington and Clark. Ultimately, the trial court did not abuse its discretion because the supporting testimony of both Granberry and Rini was not relevant to the determination as to whether Arrington and Clark's changed testimony was, in fact, newly discovered. It clearly was not relevant for this purpose and thus, appellant's third assignment of error is overruled.

## FIRST ASSIGNMENT OF ERROR

{¶ 44} "The trial court abused its discretion when it denied appellant's motion for a new trial based on the newly discovered evidence from Myzelle Arrington and/or Marcus Clark."

{¶ 45} Appellant argues that the trial court abused its discretion in not granting the motion for new trial based on the testimony of Arrington and Clark. Appellant contends that the trial court was required to make a credibility determination based on this court's ruling in *State v. Perdue,* 2005-Ohio-2703, 2005 WL 1300782. Appellant argues that the recanted testimony is credible and the testimony given at trial was not. Further, appellant claims that the trial court was required to specifically find that the trial testimony was either more or less credible than the recanted testimony. Appellant has misinterpreted the trial court's decision and our holding in *Perdue.*

{¶ 46} The record clearly reflects that the trial court found "the testimony of both witnesses not to be credible." The standard that we set forth in *Perdue* is: "If the trial court determines the recantation is believable, the trial court must then determine whether the recanted testimony would have materially affected the outcome of trial." *Perdue,* 2005-Ohio-2703, 2005 WL 1300782, ¶ 18. Clearly, the trial court did not make such a finding, and therefore, did not need to determine whether the recanted testimony would have materially affected the outcome of the trial. The record fully supports the trial court's conclusion. It is clear from the record that Clark's new testimony, as described below, completely

contradicts some basic facts established at trial. Salman's body was found hidden under the front counter, a few feet from Al Turk, and not down an aisle or in the opposite direction of the front counter. There was no evidence that a second gun was used at the crime scene. All the recovered bullet casings were matched to the 9 mm Glock that was recovered when appellant was arrested. Even in appellant's own testimony, where he claims that Thomas murdered Salman, he testified that there was no second gun. Appellant stated that Thomas took appellant's gun and used it to shoot the second victim. Clark's recanted testimony is so contradictory to the basic facts established at trial, including appellant's own theory of the case that there was only one gun involved, that no reasonable factfinder could find his recanted testimony credible.

{¶ 47} Similarly, the testimony of Arrington is so rife with contradictions that it cannot be found to be credible. Arrington could not remember basic facts of the crime, such as who was and was not in the store at any given moment. He could not remember whether his earlier statements or testimony were accurate. He blamed his current bad memory on the fact that the crime took place 16 years ago and that he "smoked weed and did a lot of drugs in those 16 years." His affidavit in support of the motion for new trial clearly contradicted his testimony at the hearing on the motion. For example, he stated in his affidavit that prosecutor Philomena told him that he could be charged with complicity to murder, told him he was recorded on a video camera at the store, and told him that he would help Arrington deal with some criminal charges of his own. Yet at the hearing, he testified that he never had any direct communication with prosecutor Philomena, that Philomena never helped him with any cases, and that Philomena never responded to the May 8, 1995 letter.

{¶ 48} The record supports the trial court's determination that the recanted testimony was incredible, and it was within the trial court's discretion to reject the testimony as the basis for granting a new trial. That said, even if we assume for the sake of argument that their recanted testimony was credible, the testimony is neither newly discovered evidence nor could it have affected the outcome of the trial. Therefore, it still does not satisfy the standard we set forth in *Perdue*, 2005-Ohio-2703, 2005 WL 1300782. At the January 15, 2010 hearing, Clark testified that he was in the Midway Market at the time of the shooting. He testified that he only vaguely remembered appellant's trial in 1996. He testified that appellant shot Al Turk, which is consistent with his trial testimony. Clark then testified that he saw Thomas shoot the storeowner, Salman. He testified that Thomas used his own gun to shoot Salman as he came running up the store aisle. He reiterated that Thomas did not use appellant's gun. He testified that Thomas did not shoot Salman behind the counter, but in the

opposite direction down an aisle of the store. These are the essential facts in Clark's recanted testimony.

{¶ 49} Clark does not share any new material fact that was not already available, or at least discoverable, during the 1996 trial. Clark now contends that he was actually inside the store at the time of the shootings, but he testified at trial that he was "at" the store. The difference between Clark being "at" the store rather than "in" the store is not a material fact at issue in this case. It may affect his credibility in testifying as to what he actually observed, but it is not a fact that, in and of itself, explains who shot one or both victims.

{¶ 50} Importantly, Clark's testimony that he saw Thomas shoot one of the victims is not an entirely new fact. On cross-examination at the original trial, Clark was extensively questioned about his previous statements to the police that implicated Thomas in both shootings. The record shows that Clark told the police that Thomas committed these murders. At trial, Clark changed his story to implicate appellant, alone. Clark admitted at trial that he lied about where he was standing when he heard the first shot and that he was not two blocks away as he had originally told the police. Clark also initially told the police that it was Thomas who had the gun, that Thomas was the one who wiped blood off the gun, and that Thomas said, "I think I killed him." He also told police that Thomas said, "[I]f anybody snitches on him, he'd kill them." In correcting and changing his story at the original trial, Clark clearly testified that many aspects of his first story to the police were not true. Appellant's counsel knew of Clark's changing testimony and his prior statements. Appellant's counsel effectively undermined Clark's credibility at trial by challenging Clark with those prior statements. Clark is now attempting to return, in part, to his original position and establish once again that Thomas was the shooter, at least of Salman. Since Clark had already testified about this at the original trial, it is not new evidence and cannot be used as the basis for a new trial. It simply does not meet the standard as set forth in any of the controlling caselaw.

{¶ 51} Appellant's argument regarding Arrington, on the other hand, is predicated on a complete mischaracterization of Arrington's trial testimony. At the original trial, Arrington testified that appellant and Thomas walked into the convenience store behind Arrington and Clark. As Arrington exited the store, he saw appellant and Thomas place alcoholic beverages on the counter. After Arrington left the store, he stopped just outside the store to talk with Granberry and McMeans. Arrington testified that he saw appellant and Thomas return to their car, place the alcohol in the car, and then return to the store.

{¶ 52} According to Arrington's trial testimony, Thomas stood by the door, and Arrington "never lost sight of him." Appellant's back was turned toward Arrington. However, Arrington saw appellant walk down the alcoholic-beverages

aisle and then reach for his neck with one hand, and reach for his waist with the other hand. When Arrington heard gunshots, he fled the scene.

{¶ 53} Appellant consistently admits that he killed Al Turk. The issue at trial was to determine who killed Salman. Contrary to appellant's argument, Arrington never testified at trial that he saw appellant shoot Salman. In fact, Arrington's trial testimony neither implicated appellant nor exculpated appellant for Salman's death. In fact, Arrington's testimony actually corroborated appellant's trial testimony.

{¶ 54} Appellant testified that he and Thomas went to the store to purchase cigars. According to appellant, Al Turk "started talking loud" to appellant and Thomas when they were at the counter, after appellant and Thomas began arguing over who would pay for the beer Thomas wanted to purchase. Appellant and Thomas made their purchase without incident. However, when appellant got back to the car, he searched his pockets but could not find the cigar he had just purchased, or the marijuana he had purchased earlier in the Kimmelbrook housing projects.

{¶ 55} Appellant testified that he and Thomas went back into the store and that he and Al Turk began arguing. Appellant conceded that he was so intoxicated that he could not understand what Al Turk was saying to him. Appellant testified that at some point during the argument, Al Turk "[went] to the left, like he's reaching for something and [appellant] panicked and shot." According to appellant's trial testimony, after he shot Al Turk, Thomas took his gun from him and shot Salman. Appellant conceded on cross-examination that he had pulled a bandana over his face.

{¶ 56} Arrington's original testimony was that appellant and Thomas both went back into the store. He testified that appellant appeared to reach for his neck and his waist. When Arrington heard gunfire, he fled the scene. Therefore, Arrington's testimony was consistent with appellant's testimony at trial: that appellant went back into the store, then drew his weapon and shot Al Turk. Although Arrington testified that he never lost sight of Thomas while he was looking into the store, it is obvious from his trial testimony that he did not see what happened after the first shot was fired, because he testified that he immediately fled the scene. Consequently, the jury could have drawn no inference regarding Salman's shooting based upon Arrington's trial testimony.

{¶ 57} Arrington essentially conceded at the hearing on the motion for new trial that his testimony at the hearing was not "new" evidence, because he never testified at trial as to the identity of the man who shot Salman:

{¶ 58} "Q: You didn't see the shooting actually occur at the Midway Market, did you?

{¶ 59} "A: No.

{¶ 60} "Q: All right. So I mean that—that's consistent with your trial testimony, isn't it?

{¶ 61} "A: I don't recall.

{¶ 62} "Q: Well, you didn't see the shooters. You've never changed that; right? The shooting occurred. You never saw a person point the gun and fire it?

{¶ 63} "A: No, I never seen it."

{¶ 64} Because Arrington's trial testimony did not implicate appellant in Salman's shooting, the "recantation" of his trial testimony cannot change the outcome of the trial. Moreover, because Arrington's recanted testimony actually corroborated appellant's testimony at trial, appellant suffered no prejudice as a result of the admission of Arrington's trial testimony.

{¶ 65} Because we find no merit in any of the arguments presented under appellant's first assignment of error, it is hereby overruled.

Conclusion

{¶ 66} In conclusion, we dismiss appellant's fourth assignment of error as moot and because we are considering the merits of this appeal as if the motion for new trial based on newly discovered evidence has met the criteria for being timely filed. Appellant's first, second, and third assignments of error are overruled because the testimony of Myzelle Arrington and Marcus Clark does not by law constitute newly discovered evidence, and therefore, the trial court did not abuse its discretion in disallowing the testimony as the basis for a new trial. The evidence of Jerry Granberry and Gary Rini, offered to support Arrington and Clark's testimony, had no relevance to the issue before the court: whether the underlying changed testimony was newly discovered. Thus, it was also properly disallowed. Because we overrule each of appellant's pertinent assignments of error, we hereby affirm the judgment of the Mahoning County Court of Common Pleas.

Judgment affirmed.

DONOFRIO and DEGENARO, JJ., concur.