[Cite as *State v. Moore*, 2014-Ohio-358.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | CASE NO. 13 MA 9 |
| V. | ) | |
| | ) | OPINION |
| ERIC MOORE, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:     Criminal Appeal from Court of Common
                              Pleas of Mahoning County, Ohio
                              Case No. 98CR136

JUDGMENT:                     Affirmed

APPEARANCES:
For Plaintiff-Appellee         Paul Gains
                               Prosecutor
                               Ralph Rivera
                               Assistant Prosecutor
                               21 W. Boardman ST., 6th Floor
                               Youngstown, Ohio 44503

For Defendant-Appellant        Eric Moore, Pro-se
                               #333-698
                               Trumbull Correctional Institution
                               5701 Burnett Road
                               P.O. Box 901
                               Leavittsburg, Ohio 44430

JUDGES:

Hon. Gene Donofrio
Hon. Joseph J. Vukovich
Hon. Mary DeGenaro

Dated: January 31, 2014

[Cite as *State v. Moore*, 2014-Ohio-358.]
DONOFRIO, J.

{¶1}    Defendant-appellant Eric L. Moore appeals a decision of the Mahoning County Common Pleas Court overruling his motion for a new trial.

{¶2}    On January 27, 1996, a dance was held at The Pub, which is located in Kilcawley Center on the campus of Youngstown State University, in the city of Youngstown, Mahoning County, Ohio.[1] (Tr. 41). In attendance at the dance were several YSU football players, namely William Walker, Leon Jones, John Phillip Baptiste, and the victim, Jermaine Hopkins. (Tr. 41, 210, 385-86).

{¶3}    While at the dance, an altercation erupted when William Walker's girlfriend accidentally bumped into Timothy Slocum, a co-defendant in this case. (Tr. 42). When Walker approached Slocum to apologize, Slocum pushed him and a fight ensued. (Tr. 42). Jones, Baptiste and Hopkins tried to break up the fight and separate the combatants. (Tr. 42-43). Eventually, the YSU police arrived, canceled the dance and ordered everyone to leave. (Tr. 43-44). However, Slocum continued to make threats; saying that he would be back and that he was going to kill all of the men involved in the fight. (Tr. 49).

{¶4}    Upon leaving the dance, the football players went to prepare for an after-dance party at a house located at 107 Park Avenue in Youngstown where several YSU football players, including Hopkins and Jones, resided. (Tr. 36, 209, 211-212, 388).

{¶5}    Meanwhile, Slocum and an individual named Anthony Howell went to the Class Act bar. (Tr. 266). After a short stay at the Class Act, Slocum left the bar with Moore and several others and proceeded in separate vehicles to the after-dance party being held by the football players at 107 Park Avenue in Youngstown. (Tr. 267).

{¶6}    When Slocum arrived at the party, Mack Gilchrist, another YSU football player, stopped him and asked him to leave. (Tr. 76-77). Slocum said that he wanted the men involved in the fight at The Pub. (Tr. 254). Ultimately, punches were thrown, shots were fired and Jermaine Hopkins was hit in the head and subsequently died. (Tr. 652).

---

1. The underlying facts of this case are set forth nearly verbatim from this Court's decision concerning Moore's direct appeal in *State v. Moore*, 7th Dist. No. 97-CA-39, 2000 WL 1506206, at *1 - *2 (Sept. 29, 2000).

{¶7} Eboni Witherspoon, who was patting down female guests before they entered the party, testified that she observed two men approach the party, saw Moore throw a punch at Baptiste, saw a gun and heard three gun shots. (Tr. 131, 135, 137, 143). Elizabeth Williams provided the police with a statement which indicated that she witnessed Moore shoot the gun. (Tr. 171). Darnell Bracy, a football player that was affiliated with Slocum on the night in question, also informed the police that appellant was the shooter and that he saw appellant shoot Jermaine Hopkins. (Tr. 252, 352).

{¶8} Leon Jones also testified that he saw Moore approach the party and pull a gun out from behind his back. (Tr. 392). Jones further testified that Moore shot the gun right over his ear, prompting him to run inside the house. (Tr. 392, 394).

{¶9} Following a jury trial, Moore was found guilty of aggravated murder and attempted aggravated murder, along with firearm specifications on each. Accordingly, on February 11, 1997, Moore was sentenced to life imprisonment on the aggravated murder charge; an indefinite incarceration term of not less than ten nor more than twenty-five years on the attempted aggravated murder charge; and, three years on each firearm specification to be served consecutively with the prior imposed sentences.

{¶10} Thereafter, Moore filed a timely appeal in this Court in which he raised four assignments of error. Specifically, Moore argued that he was denied a fair trial by "the trial court's open and obvious bias" against him; that the trial court committed reversible error when it permitted the state to impeach two of its own witnesses without a showing of either surprise or affirmative damage; that his indictment was invalid because an unauthorized individual was present in the grand jury room when one of the witnesses testified; and that he was denied effective assistance of counsel.

{¶11} On September 29, 2000, this Court found all of Moore's assignments of error to be without merit and thus affirmed the judgment of the trial court. *State v. Moore*, 7th Dist. No. 97-CA-39, 2000 WL 1506206 (Sept. 29, 2000).

{¶12} On August 17, 2012, pursuant to Crim.R. 33, counsel for Moore filed a

delayed motion for a new trial based on newly discovered evidence in Mahoning County Common Pleas Court. Despite the motion's untimeliness, it should be noted that Moore did *not* first file a motion for leave to file a motion for new trial. Nonetheless, in support, Moore attached an affidavit of Butler Johnson, in which Johnson averred that both he and Elizabeth Williams offered coerced written statements and subsequent testimony to avoid prosecution. Additionally, Moore attached a memorandum in support in which Moore argued that although he filed his motion for a new trial outside of Crim.R. 33's 120 day time-limit, he was unavoidably prevented from the discovery of this evidence because he was incarcerated for the duration of the proceedings against him. Moore offered no other evidence to establish that he was unavoidably prevented from discovering the new evidence. Nonetheless, Moore concluded Johnson's affidavit entitled him, at the very least, to a hearing to establish by clear and convincing evidence that he was indeed unavoidably prevented from discovering the evidence.

{¶13} On January 15, 2013, the trial court overruled Moore's motion for new trial.

{¶14} Moore timely appealed the trial court's judgment and filed a motion for appointment of new counsel.

{¶15} Proceeding pro se on appeal, Moore's sole assignment of error states:

> APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION.

{¶16} The standard for determining ineffective assistance of counsel was set out by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 669, 104 S.Ct. 2052 (1984). In order to demonstrate ineffective assistance of counsel, an appellant must first show that his defense counsel was deficient. *Id.* This requires that appellant show that his defense counsel's performance fell below an objective standard of reasonableness. *Id.* Secondly, an appellant must then prove that he was prejudiced by defense counsel's deficiency. This requires that appellant

show that there is a "reasonable probability that but for [defense] counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

**{¶17}** Here, Moore argues that his defense counsel was deficient in failing to first seek and obtain leave from the trial court before filing his untimely motion for new trial pursuant to Crim.R. 33. Suggesting that he was also prejudiced by his counsel's deficiency, Moore further asserts that but for counsel's failure to file for leave, this Court would not have construed Moore's motion as a petition for post-conviction relief. Thus, Moore concludes, "[i]f not for counsel's deficient and prejudicial performance, appellate [sic] would have had proper new trial proceedings and a hearing on his motion."

**{¶18}** In response, the state concedes that Moore's counsel failed to seek and obtain leave and thus failed to establish that he was unavoidably prevented from discovering the new evidence – and further failed to establish that he filed his motion within a reasonable time upon discovering said evidence. However, the state argues that based on the record, the trial court's judgment would have been the same even if Moore's counsel *had* properly filed the motion for leave. In short, the state argues that even if Moore's counsel was deficient, Moore was not prejudiced by his counsel's shortcomings as the trial court would have denied Moore's motion all the same.

**{¶19}** In this case, the performance of Moore's counsel was neither deficient nor prejudicial. A trial court's decision to grant or deny a new trial on grounds of newly discovered evidence falls within the court's sound discretion. *State v. Hawkins,* 66 Ohio St.3d 339, 350, 612 N.E.2d 1227 (1993). Likewise, it is within the trial court's discretion to determine whether or not it is necessary to hold an evidentiary hearing on a new trial motion. *State v. Green,* 7th Dist. No. 05 MA 116, 2006-Ohio-3097, ¶ 11. Therefore, such a decision cannot be reversed absent an abuse of discretion. Abuse of discretion connotes more than an error of law or judgment; it implies the trial court's judgment was arbitrary, unreasonable, or unconscionable. *State v. Adams,* 62 Ohio St.2d 151, 157, 56 N.E.2d 654 (1980).

**{¶20}** Moore's filing a motion for a new trial some fifteen years following his conviction certainly raises the question of timeliness. Crim.R. 33(B) addresses timeliness when the basis of a new trial motion is newly discovered evidence:

Motions for new trial on account of newly discovered evidence shall be filed within one hundred twenty days after the day upon which the verdict was rendered, or the decision of the court where trial by jury has been waived. If it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from the discovery of the evidence upon which he must rely, such motion shall be filed within seven days from an order of the court finding that he was unavoidably prevented from discovering the evidence within the one hundred twenty day period.

**{¶21}** Because Moore's new trial motion was filed well outside the 120-day period, he was required to obtain leave of court.

**{¶22}** Leave of court must be granted before the merits of the motion are reached. *State v. Lordi,* 149 Ohio App.3d 627, 2002-Ohio-5517, 778 N.E.2d 605, ¶ 25 (7th Dist.). The moving party must prove unavoidable delay by clear and convincing evidence in order to obtain leave. *Id.* at ¶ 26; Crim.R. 33(B). Unavoidable delay results when the party had no knowledge of the existence of the ground supporting the motion for a new trial and could not have learned of the existence of that ground within the required time in the exercise of reasonable diligence. *Id.* citing, *State v. Walden,* 19 Ohio App.3d 141, 146, 1483 N.E.2d 859 (10th Dist.1984). The requirement of clear and convincing evidence puts the burden on the defendant to prove he was unavoidably prevented from discovering the evidence in a timely manner. *State v. Fortson,* 8th Dist. No. 82545, 2003-Ohio-5387, ¶ 12.

**{¶23}** In his new trial motion, the only reason Moore offered that he was unavoidably prevented from discovering the allegations contained within the affidavit was that he was incarcerated. However, Moore's post-trial incarceration does not justify his failure to discover the allegations contained within the affidavit earlier. It

has been recognized that "the fact of a defendant's incarceration, without more, does not equate to clear and convincing evidence that he was unavoidably prevented from discovering the evidence within the time parameter established by Crim.R. 33(B)." *State v. Berry*, 10th Dist. No. 06AP-803, 2007-Ohio-2244, ¶ 40. *Accord State v. Golden*, 10th Dist. No. 09AP-1004, 2010-Ohio-4438, ¶ 16.

**{¶24}** Even though Moore has been incarcerated, he does not explain *how* he has been prevented from contacting the affiant, Butler Johnson. Indeed, it is unreasonable for Moore not to have attempted to contact Johnson sooner if he knew that Johnson and Elizabeth Williams had provided false testimony. Moore was present at his own trial where Johnson and Elizabeth Williams presumably testified. If he genuinely knew Johnson's or William's testimony to be false, he should have known that at the time of their testimony. Consequently, it was upon Moore to exercise reasonable diligence to make efforts to obtain an affidavit from one of them establishing the fact of their false testimony and the reasons for it a lot sooner than fifteen years following his conviction. In other words, Moore did have knowledge of the existence of the ground supporting the motion from the time of his trial and, although he was incarcerated, he could have contacted the witnesses himself or through representatives and investigated the nature of the alleged false testimony and the reasons behind it.

**{¶25}** Moreover, even if we were to reach the substantive merits of Moore's new trial motion, the credibility surrounding the sole affidavit in support is circumspect. Johnson averred that his and Elizabeth Williams's testimony was coerced by investigators. This suggests that their testimony was false and that he and Williams would be recanting or that their testimony could have been impeached. As this Court observed in *State v. Brown*, 186 Ohio App.3d 309, 2010-Ohio-405, 318, 927 N.E.2d 1133 (7th Dist.) at ¶ 20:

> "Newly discovered evidence must do more than merely impeach or contradict evidence at trial, and there must be some compelling reason to accept a recantation over testimony given at trial." *State v.*

*Fortson,* 8th Dist. No. 82545, 2003-Ohio-5387, 2003 WL 22312206, ¶ 13. "[N]ewly discovered evidence which purportedly recants testimony given at trial is 'looked upon with the utmost suspicion.'" *State v. Germany* (Sept. 30, 1993), 8th Dist. No. 63568, 1993 WL 389577, *6, quoting *United States v. Lewis* (C.A.6, 1964), 338 F.2d 137, 139. "Recanting affidavits and witnesses are viewed with extreme suspicion because the witness, by making contradictory statements, either lied at trial, or in the current testimony, or both times." *State v. Gray,* 8th Dist. No. 92646, 2010-Ohio-11, 2010 WL 27872, ¶ 29, citing *State v. Jones,* 10th Dist. No. 06AP-62, 2006-Ohio-5953, 2006 WL 3240659, ¶ 25, and *United States v. Earles* (N.D.Iowa, 1997), 983 F.Supp. 1236, 1248.

**{¶26}** In sum, there was no adequate basis upon which Moore's counsel could have obtained leave of court to file the motion for new trial. Had Moore's counsel sought leave, the result before the trial court would have been no different. Therefore, Moore's counsel was not deficient for not seeking leave of court to file the motion for a new trial and Moore suffered no prejudice as a result.

**{¶27}** Accordingly, Moore's sole assignment of error is without merit.

**{¶28}** The trial court's judgment is affirmed.

Vukovich, J., concurs.

DeGenaro, P.J., concurs.