[Cite as *State v. Williams*, 2012-Ohio-4277.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 97730

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## MICHAEL WILLIAMS

DEFENDANT-APPELLANT

## JUDGMENT:
## AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-550955

**BEFORE:** E. Gallagher, J., Rocco, P.J., and Kilbane, J.

**RELEASED AND JOURNALIZED:** September 20, 2012

**ATTORNEY FOR APPELLANT**

John P. Parker
988 East 185th Street
Cleveland, Ohio   44119


**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

By:    Margaret A. Troia
Assistant County Prosecutor
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio   44113

EILEEN A. GALLAGHER, J.:

{¶1}   Michael Williams appeals from his convictions rendered in the Cuyahoga County Court of Common Pleas. Williams argues that his trial counsel rendered ineffective assistance, his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence. For the following reasons, we affirm.

{¶2}   The facts in the instant case arise from events that occurred on April 27, 2010. The victim, Wilson Clark, received a telephone call from Williams who inquired about purchasing an automobile from Clark.   Clark and Williams had known each other for many years prior to the incident.   Clark and his girlfriend, Dominique Hearn, drove to meet Williams so that he could look at the car.   Upon arriving at E. 133 and Holyoke in Cleveland, Ohio, Clark called Williams to tell him that he had arrived.

{¶3}   Clark testified that Williams approached and entered the car.   Clark stated that Williams pulled a gun and told Clark, "you know what it is." Clark then explained that this was slang for a robbery.   Clark testified that Williams was pointing the gun at him and he responded by giving Williams $9 that he had in his pocket.

{¶4}   Clark stated that at this point, Williams had one leg in and one leg out of the car and that although Williams instructed him "[d]on't pull off in this car, man," he began to drive hoping that Williams would fall from the car.   Clark testified that when he began to drive, Williams shot him once in the side of his mouth which exited through

his neck and once in the chest. Clark crashed his car into a house and was later transported to the hospital. Hearn was not injured during the altercation.

{¶5} Cleveland police officer Randy Hicks testified that he arrived at the scene shortly after the shooting. Officer Hicks testified that he repeatedly asked Clark who shot him and Clark responded "Mike Jones." Officer Hicks stated that, from his experience working with the narcotics unit in this area, he knew that "Mike Jones" was Williams' alias. Officer Hicks testified that he went to Williams' residence to search for him but that he was not at home.

{¶6} Dominick Allen testified that he witnessed, through the window of his apartment, Williams running from the car shortly after he heard gunshots. Allen also testified that he knew Williams prior to this incident because he and Williams lived in the same apartment complex.

{¶7} During the investigation, police interviewed Hearn and, during that interview, she identified Michael Houston as the shooter. During that same interview, however, she repeatedly denied having seen the shooter. Hearn testified that she identified Houston because she knew that she and Clark were meeting a "Mike" and that Michael Houston was the only person by that name whom she knew to live in the area. Houston was later dropped as a suspect in the case because he had an alibi for the entire day of the incident.

{¶8} Clark was unconscious for nearly a month after the incident and awoke on

May 17, 2010, in the hospital. Shortly after that date, Clark identified Williams from a police photo array. A blind administrator was later used to present the same photo array to Clark. He again identified Williams as the shooter. At the time of trial, Clark made an in-court identification of Williams as the man who shot him on April 27, 2010.

{¶9} Williams waived his right to a jury and the court convicted him of two counts of attempted murder with one and three-year firearm specifications, two counts of felonious assault with one and three-year firearm specifications, two counts of aggravated robbery with one and three-year firearm specifications and two counts of improperly handling a firearm in a motor vehicle. He was sentenced to serve 15 years with five years of postrelease control. It is from this judgment that Williams appeals.

{¶10} In his first assignment of error, Williams argues that his counsel was ineffective in assisting him at trial. For the reasons that follow, we disagree.

{¶11} Initially we note that, in general, a properly licensed attorney practicing in this state is presumed to be competent. *State v. Lytle*, 48 Ohio St.2d 391, 358 N.E.2d 623 (1976).

{¶12} In order to prevail on a claim of ineffective assistance of counsel, the appellant must show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). Counsel's performance may be

found to be deficient if counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland* at 687. To establish prejudice, "the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *Bradley* at 143.

{¶13} In determining whether counsel's performance fell below an objective standard of reasonableness, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland* at 689. Because of the difficulties inherent in determining whether counsel rendered effective assistance in any given case, a strong presumption exists that counsel's conduct fell within the wide range of reasonable, professional assistance. *Id*.

{¶14} Williams argues that his counsel should have impeached Dominick Allen with discrepancies in his statements. In a supplemental discovery response filed by the state of Ohio on October 18, 2011, the state provided that Allen, on October 17, 2011, reported that he did not know who he saw running from the car "when confronted with his written statement, it was the defendant he saw jump from the vehicle following the gunshots."

{¶15} Williams also argues that Allen should have been impeached with information provided by the state through supplemental responses to discovery filed October 20, 2011 that reflects that Clark reported on October 18, 2011 that "he heard

that Domick [sic] Allen was involved in planning his robbery."

{¶16} With respect to witness Allen, his initial identification was that of the appellant and, over one year later, he indicated to the prosecuting attorney that he did not know who it was that jumped from the vehicle. However, when presented with his written statement, he acknowledged that it was the appellant that he had seen jump.

{¶17} As to any failure by trial counsel to address with Clark or Allen the suggestion that Mr. Allen was involved in the planning of the robbery and that he showed to Clark a handgun months before the shooting, those facts, even if true, would not change the outcome of the case against the appellant.

{¶18} The choice to impeach a witness is a trial tactic. The Supreme Court of Ohio has held, "we will not second-guess trial strategy decisions, and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *State v. Mason*, 82 Ohio St.3d 144, 157-158, 694 N.E.2d 932 (1998) (overruled on other grounds). Furthermore, "Debatable trial tactics do not constitute a denial of effective assistance of counsel." *State v. Clayton*, 62 Ohio St.2d 45, 49, 402 N.E.2d 1189 (8th Dist. 1980). Here, trial counsel's decision not to impeach must be granted deference.

{¶19} Williams argues that trial counsel should have impeached Clark on the basis that his injuries would have impaired his recollection of the incident on the day it occurred. There is nothing in the record that reflects that Clark's injuries caused any

impairment of his cognitive functions. In his testimony, Clark detailed his injuries as a missing lung, a bullet in his heart, injuries to two vertebrae, and a wounded mouth. In support of his claim, Williams argues that the medical report reflects that Clark experienced shock and major trauma and could not consent to medical procedures when first rushed to the hospital. We note that this was due to the fact that he was unconscious at the time. It cannot be construed as ineffective assistance of counsel when trial counsel does not attempt to impeach a witness based on unfounded conjecture.

{¶20} Williams also argues that his defense counsel never offered evidence to show that Williams voluntarily presented himself at the East Cleveland Police Department and that he told officers that he knew nothing about the shooting and that he was at his girlfriend's house at the time of the incident. This information was provided to defense counsel in supplemental discovery filed by the state on October 20, 2011. Williams does not explain why it was error for his counsel to not use this evidence, nor does he establish the likelihood of a different outcome if it were to have been used. The omission of this evidence by trial counsel was a tactical decision that we will not second-guess.

{¶21} Williams next argues that Hearn related to the state on June 22, 2011, that she was told by Clark that she "picked the wrong guy" from the photo array shown to her when she identified Michael Houston as the assailant.

{¶22} On June 27, 2011, the state of Ohio filed a supplemental response to

discovery that reflected that on June 22, 2011, Sgt. Cunningham related that Dominque Hearn stated to him that Michael Williams was not the shooter. Counsel failed to explore that information through examination of either Sgt. Cunningham or Dominique Hearn.

{¶23} We find this evidence to be irrelevant. At no point was Hearn utilized at trial to identify Williams as the shooter. She testified at trial as to what happened the day of the incident, and to explain why she initially identified Houston as the shooter. Hearn always maintained that she never saw the shooter. As such, this evidence cannot be used to establish a claim of ineffective assistance of counsel.

{¶24} Williams argues that trial counsel should have filed motions to preserve all evidence and a motion to suppress eyewitness identification as the East Cleveland Police Department lost the photo arrays that they had showed Clark the first time they visited him in the hospital. Williams claims that counsel should have tested the procedures used in administering the photo arrays. This does not create evidence that had this error not occurred there is a reasonable probability of a different outcome. Clark identified Williams in a second identical photo array administered by a "blind administrator" and also in open court during trial. The photo array that was lost does not somehow nullify the other three instances wherein Clark identified Williams as the shooter. Further, Clark knew Williams for many years prior to the incident.

{¶25} For the aforementioned reasons, Williams' first assignment of error is

overruled.

{¶26}    In his second assignment of error, Williams argues that there was insufficient evidence to convict him of the crimes of attempted murder, felonious assault, aggravated robbery, all three of which carry one and three-year firearm specifications, and improperly handling a firearm in a motor vehicle.   For the reasons stated below, we disagree.

{¶27}   This court has said, in evaluating a sufficiency of the evidence argument

> courts are to assess not whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. The weight and credibility of the evidence are left to the trier of fact.   *State v. Jackson*, 8th Dist. No. 86542, 2006-Ohio-1938, ¶ 23.

{¶28}   Williams was convicted of attempting to violate R.C. 2903.02(A) and (B) that reads

> (A) No person shall purposely cause the death of another or the unlawful termination of another's pregnancy. (B) No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903.04 of the Revised Code.

{¶29}   The attempt statute, R.C. 2923.02 provides that:

> No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense. * * * Whoever violates this section is guilty of an attempt to commit an offense.

**{¶30}**  Williams was convicted for violations of R.C. 2903.11(A)(1) and (2) for felonious assault that reads

> (A)  No person shall knowingly do either of the following: (1)  Cause serious physical harm to another or to another's unborn; (2)  Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance.

**{¶31}**  Williams was convicted for violations of R.C. 2911.01(A)(1) and (3) for aggravated robbery that reads

> (A)  No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following: (1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it; * * * (3) Inflict, or attempt to inflict, serious physical harm on another.

**{¶32}**  Lastly, Williams was convicted for violations of R.C. 2923.16(A) and (B) for improperly handling a firearm in a motor vehicle that reads

> (A)  No person shall knowingly discharge a firearm while in or on a motor vehicle.  (B)  No person shall knowingly transport or have a loaded firearm in a motor vehicle in such a manner that the firearm is accessible to the operator or any passenger without leaving the vehicle.

**{¶33}**  Clark's testimony alone, if believed, is sufficient to establish that Williams committed each of the essential elements of the crimes for which he was convicted.  According to Clark, Williams did knowingly inflict serious physical harm on Clark by shooting him twice.  He did so while using a gun. This fulfills the elements of the felonious assault convictions.

{¶34}   With respect to the aggravated robbery convictions, Williams, while in the commission of robbing Clark, possessed, displayed, brandished and used a deadly weapon to inflict serious harm on Clark.   The elements of the aggravated robbery convictions have been met.

{¶35}   Clark's testimony also established the elements of improper handling of a firearm in a motor vehicle; Williams knowingly had and discharged a loaded firearm inside Clark's vehicle.

{¶36}   Lastly, Clark's testimony sufficiently established that Williams committed all of the elements of attempted murder.   Williams knowingly engaged in conduct that, if successful, would have resulted in the death of Clark.   He attempted to cause Clark's death and he did so in commission of two violent felonies of the first or second degree, i.e. felonious assault and aggravated robbery.

{¶37}   When viewing the evidence in the light most favorable to the prosecution, Clark's testimony provides a reasonable trier of fact with all of the essential elements of each of the crimes for which Williams was charged.

{¶38}   Williams' second assignment of error is overruled.

{¶39}   Williams' final assignment of error is that his conviction was against the manifest weight of the evidence.   We disagree.

{¶40}   When considering a manifest weight challenge the court is concerned not with the burden of production, as with a sufficiency challenge, but rather the burden of

persuasion.

> When a defendant asserts that his conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Jackson*, 8th Dist. No. 86542, 2006-Ohio-1938, ¶ 29.

**{¶41}** The state has provided evidence that Clark identified Williams as the person who entered his car, robbed him and shot him several times while seated in the automobile. Clark identified Williams on the day of the shooting, on two different occasions in the hospital while he was recovering and in open court. Hearn described the incident in the very same way as Clark had but was not able to identify the shooter. Allen witnessed Williams run from the car seconds after shots were fired. Both Allen and Clark knew Williams prior to this incident and had no problem identifying him.

**{¶42}** Williams offered the following evidence on his own behalf: first, that Allen's character was subject to suspicion; that at one of the four different times Clark identified Williams as the assailant, it was done so improperly; that Hearn may have been given improper instructions in making an identification of the shooter, even though her testimony was never used to identify Williams and that Williams himself went to the police station a few days after the shooting to tell the police that he was not involved and that he had an alibi.

**{¶43}** We find that the testimony of Clark is the most credible in this case and

thus give it the greatest weight. He was unwavering in his assertion that Williams, whom he knew because Williams attended grade school with Clark's little brother, was the man who robbed and shot him on April 27, 2010. We find no evidence that the court, as the trier of fact, in this case clearly lost its way in evaluating the evidence. Here, the burden of persuasion has been met by the state and there has been no "manifest miscarriage of justice that [requires] the conviction [to be] reversed and a new trial ordered."

{¶44} For the reasons stated above, Williams' third and final assignment of error is overruled.

{¶45} The judgment of the trial court is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said lower court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. The case is remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

EILEEN A. GALLAGHER, JUDGE

KENNETH A. ROCCO, P.J., and
MARY EILEEN KILBANE, J., CONCUR


## Appendix

**Assignments of Error**

**"I.    Trial Counsel was ineffective under the Sixth and Fourteenth Amendments of the Federal Constitution.**

**II.    The evidence was insufficient under the Fourteenth Amendment of the Federal Constitution.**

**III.    The convictions are against the weight of the evidence."**