[Cite as *State v. Williams*, 2013-Ohio-2706.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 99357**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## MICHAEL WILLIAMS

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-550955

**BEFORE:** Rocco, P.J., Blackmon, J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** June 27, 2013

-i-

**ATTORNEY FOR APPELLANT**

Paul Mancino, Jr.
75 Public Square
Suite 1016
Cleveland, Ohio   44113-2098

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY: T. Allan Regas
Assistant Prosecuting Attorney
The Justice Center
1200 Ontario Street
Cleveland, Ohio   44113

KENNETH A. ROCCO, P.J.:

**{¶1}** Petitioner-appellant Michael Williams appeals from the trial court order that denied his petition for postconviction relief.

**{¶2}** Williams presents three assignments of error in which he claims (1) the evidence attached to his petition was sufficient to warrant an oral hearing, (2) the trial court misapplied the doctrine of res judicata, and (3) the trial court did not independently prepare its findings of fact and conclusions of law.

**{¶3}** A review of the record leads this court to disagree with Williams's claims. Consequently, his assignments of error are overruled, and the trial court's order is affirmed.

**{¶4}** The facts surrounding Williams's original convictions in his criminal case were set forth by this court in *State v. Williams*, 8th Dist. No. 97730, 2012-Ohio-4277 ("*Williams I*"). In pertinent part, those facts are set forth as follows:

> The facts in the instant case arise from events that occurred on April 27, 2010. The victim, Wilson Clark, received a telephone call from Williams who inquired about purchasing an automobile from Clark. *Clark and Williams had known each other for many years prior to the incident.* Clark and his girlfriend, Dominique Hearn, drove to meet Williams so that he could look at the car. Upon arriving at E. 133 and Holyoke in Cleveland, Ohio, Clark called Williams to tell him that he had arrived.

> Clark testified that Williams approached and entered the car. Clark stated that Williams pulled a gun and told Clark, "you know what it is." Clark then explained that this was slang for a robbery. Clark testified that Williams was pointing the gun at him and he responded by giving Williams $9 that he had in his pocket.

Clark stated that at this point, Williams had one leg in and one leg out of the car and that although Williams instructed him "[d]on't pull off in this car, man," he began to drive hoping that Williams would fall from the car. Clark testified that when he began to drive, *Williams shot him* once in the side of his mouth which exited through his neck and once in the chest. Clark crashed his car into a house and was later transported to the hospital. Hearn was not injured during the altercation.

Cleveland police officer Randy Hicks testified that he arrived at the scene shortly after the shooting. Officer Hicks testified that he repeatedly *asked Clark who shot him and Clark responded "Mike Jones."* Officer Hicks stated that, from his experience working with the narcotics unit in this area, he knew that *"Mike Jones" was Williams' alias*. Officer Hicks testified that he went to Williams' residence to search for him but that he was not at home.

*Dominick Allen testified that he witnessed, through the window of his apartment, Williams running from the car* shortly after he heard gunshots. Allen also testified that *he knew Williams prior to this incident* because he and Williams lived in the same apartment complex.

During the investigation, police interviewed Hearn and, during that interview, she identified Michael Houston as the shooter. During that same interview, however, *she repeatedly denied having seen the shooter*. Hearn testified that *she identified Houston because she knew that she and Clark were meeting a "Mike" and that Michael Houston was the only person by that name whom she knew to live in the area. Houston was later dropped as a suspect in the case because he had an alibi for the entire day of the incident.*

Clark was unconscious for nearly a month after the incident and awoke on May 17, 2010, in the hospital. Shortly after that date, *Clark identified Williams from a police photo array. A blind administrator was later used to present the same photo array to Clark. He again identified Williams as the shooter*. At the time of trial, Clark made an in-court identification of Williams as the man who shot him on April 27, 2010.

*Williams waived his right to a jury* and the court convicted him of two counts of attempted murder with one and three-year firearm specifications, two counts of felonious assault with one and three-year firearm specifications, two counts of aggravated robbery with one and three-year firearm specifications and two counts of improperly handling a firearm in a motor vehicle. He was sentenced to serve 15 years with five years of postrelease control.

(Emphasis added.) *Id*. at ¶ 2-9.

**{¶5}** In his direct appeal of his convictions, Williams raised as his first assignment of error a claim of ineffective assistance of trial counsel. *Id.* at ¶ 10-25; this court responded to his arguments in pertinent part as follows:

> Williams argues that his *counsel should have impeached Dominick Allen with discrepancies in his statements.* In a supplemental discovery response filed by the state of Ohio on October 18, 2011, the state provided that Allen, on October 17, 2011, reported that he did not know who he saw running from the car "when confronted with his written statement, it was the defendant he saw jump from the vehicle following the gunshots."
>
> * * *
>
> With respect to witness Allen, his initial identification was that of the appellant and, over one year later, he indicated to the prosecuting attorney that he did not know who it was that jumped from the vehicle. However, when presented with his written statement, he acknowledged that it was the appellant that he had seen jump.
>
> * * *
>
> The choice to impeach a witness is a trial tactic. The Supreme Court of Ohio has held, "we will not second-guess trial strategy decisions, and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *State v. Mason*, 82 Ohio St.3d 144, 157-158, 1998 Ohio 370, 694 N.E.2d 932 (1998) (overruled on other grounds). Furthermore, "Debatable trial tactics do not constitute a denial of effective assistance of counsel." *State v. Clayton*, 62 Ohio St.2d 45, 49, 402 N.E.2d 1189 (8th Dist. 1980). Here, trial counsel's decision not to impeach must be granted deference.
>
> * * *
>
> Williams also *argues that his defense counsel never offered evidence to show that Williams * * * told officers that he knew nothing about the shooting and that he was at*

*his girlfriend's house at the time of the incident. This information was provided to defense counsel in supplemental discovery filed by the state on October 20, 2011. Williams does not explain why it was error for his counsel to not use this evidence, nor does he establish the likelihood of a different outcome if it were to have been used. The omission of this evidence by trial counsel was a tactical decision that we will not second-guess.*

Williams next argues that Hearn related to the state on June 22, 2011, that she was told by Clark that she "picked the wrong guy" from the photo array shown to her when she identified Michael Houston as the assailant.

On June 27, 2011, the state of Ohio filed a supplemental response to discovery that reflected that on June 22, 2011, Sgt. Cunningham related that Dominque *Hearn stated to him that Michael Williams was not the shooter. Counsel failed to explore that information through examination of either Sgt. Cunningham or Dominique Hearn.*

*We find this evidence to be irrelevant. At no point was Hearn utilized at trial to identify Williams as the shooter. She testified at trial as to what happened the day of the incident, and to explain why she initially identified Houston as the shooter. Hearn always maintained that she never saw the shooter.* As such, this evidence cannot be used to establish a claim of ineffective assistance of counsel.

Williams *argues that trial counsel should have filed motions to preserve all evidence and a motion to suppress eyewitness identification as the East Cleveland Police Department lost the photo arrays that they had showed Clark the first time they visited him in the hospital. Williams claims that counsel should have tested the procedures used in administering the photo arrays. This does not create evidence that had this error not occurred there is a reasonable probability of a different outcome. Clark identified Williams in a second identical photo array administered by a "blind administrator" and also in open court during trial. The photo array that was lost does not somehow nullify the other three instances wherein Clark identified Williams as the shooter. Further, Clark knew Williams for many years prior to the incident.*

(Emphasis added.)

{¶6} Because each of his assertions was rejected, Williams's claim of ineffective assistance failed. *Id.* During the pendency of his direct appeal of his convictions, Williams filed a petition for postconviction relief pursuant to R.C. 2953.21.

{¶7} Williams claimed in his petition that he had received ineffective assistance of counsel in the trial proceedings. In particular, Williams claimed that counsel failed to: (1) investigate his case to check his alibi, (2) confer with him to prepare a defense, (3) explain the implications before Williams waived his right to trial by jury, and (4) file a motion to suppress the identification testimony due to improper police procedure.

{¶8} Williams attached to his petition his affidavit, in which he merely averred that the allegations he made in his petition were true. He also attached copies of documents. One of these purported to be a sign-in sheet for an Alcoholics Anonymous meeting that took place on April 27, 2010 and that he asserted contained his signature. Others purported to be inmate request forms that indicated Williams had made numerous requests for his trial counsel to visit him prior to the commencement of his trial.

{¶9} The state filed an opposition brief. Subsequently, the trial court denied Williams's petition.

{¶10} Two months later, Williams filed a request for findings of fact and conclusions of law. The state responded to Williams's request by filing for the trial court's consideration proposed findings of fact and conclusions of law.

{¶11} Six weeks after the state's response, the trial court issued an order that clearly adopted the state's proposals in their entirety. After outlining the evidence

adduced at trial and setting forth the relevant parts of this court's opinion in *Williams I*, the court found that Williams's materials submitted in support of his petition did not constitute admissible evidence and that Williams's claims were barred by the doctrine of res judicata, because they were, or could have been, raised in his direct appeal.

{¶12} Williams appeals from the trial court's order with three assignments of error.

> **I. Defendant was denied due process of law when [the] court dismissed his petition for post-conviction relief without an evidentiary hearing.**
> **II. Defendant was denied due process of law when the court dismissed his petition based on an erroneous application of *res judicata*.**
> **III. Defendant was denied due process of law when the court did not independently prepare findings of fact and conclusions of law.**

{¶13} Williams argues in his assignments of error that he supplied evidence that was sufficient to warrant an oral hearing on his petition, that the trial court improperly utilized the doctrine of res judicata in denying his petition, and that, because the trial court adopted the state's proposed findings of fact and conclusions of law, the court did not independently review the record. The record, however, supports none of these arguments.

{¶14} A trial court is not required to hold a hearing on a petition for postconviction relief if the record and the petition fail to show that the defendant is entitled to relief. *State v. Calhoun*, 86 Ohio St.3d 279, 714 N.E.2d 905 (1999). The statute specifically reads that "[*u*]*nless the petition and the files and records of the case show the petitioner is not entitled to relief*, the court shall proceed to a prompt hearing on the issues * * * ." R.C. 2953.21(E); *State v. Jones*, 8th Dist. No. 83601, 2004-Ohio-3868.

{¶15} In considering a petition, the pivotal question for the trial court is whether, upon consideration of all the files and records pertaining to the underlying proceedings and any supporting evidence attached, the petitioner has set forth "sufficient operative facts to establish substantive grounds for relief." *Calhoun*, paragraph two of the syllabus. The trial court acts as a gatekeeper in determining whether a hearing is warranted. *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77.

{¶16} The trial court's "gatekeeping" function in the postconviction relief process is entitled to deference, including its decisions regarding the sufficiency of the facts set forth by the petitioner and the credibility of his affidavit. *State v. West*, 8th Dist. No. 98680, 2013-Ohio-826, ¶ 9, citing *Calhoun*. This court reviews the trial court's decisions for an abuse of discretion. *Id*. In this case, the trial court did not abuse its discretion in either declining to conduct an evidentiary hearing or applying the doctrine of res judicata.

{¶17} R.C. 2953.21 affords a prisoner postconviction relief "only if the court can find that there was such a denial or infringement of the rights of the prisoner as to render the judgment void or voidable under the Ohio Constitution or the United States Constitution." *State v. Perry*, 10 Ohio St.2d 175, 226 N.E.2d 104 (1967), paragraph four of the syllabus. A postconviction petition is not intended to provide a petitioner a second opportunity to litigate his or her conviction. *State v. Hessler*, 10th Dist. No. 01 AP-1011, 2002-Ohio-3321, ¶ 23.

**{¶18}** Rather than a direct appeal, a petition for postconviction relief is a collateral civil attack on a criminal judgment. *State v. Easley*, 10th Dist. No. 09AP-10, 2009-Ohio-3879, ¶ 9, citing *State v. Steffen*, 70 Ohio St.3d 399, 410, 639 N.E.2d 67 (1994). The petition is meant to get to constitutional issues that would otherwise be impossible to reach because the evidence supporting those issues is *not* contained in the record. *Easley* at ¶ 9.

**{¶19}** Based upon that rationale, constitutional issues cannot be considered in postconviction proceedings brought pursuant to R.C. 2953.21 where they have already, or could have, been fully litigated by the defendant, either before his judgment of conviction or on direct appeal from that judgment. *Perry*, 10 Ohio St.2d 175, 226 N.E.2d 104 (1967), at paragraph seven of the syllabus; *State v. McCullough*, 78 Ohio App.3d 587, 591, 605 N.E.2d 962 (1992). Issues properly raised in a petition for postconviction relief are only those which could *not* have been raised on direct appeal because the evidence supporting such issues is *outside* the record. *State v. Milanovich*, 42 Ohio St.2d 46, 50, 325 N.E.2d 540 (1975). If an issue has, or should have been, raised on direct appeal, the trial court may dismiss the petition on the basis of res judicata. *State v. Dowell*, 8th Dist. No. 86232, 2006-Ohio-110, ¶ 10, citing *Perry*.

**{¶20}** In order to be entitled to a hearing on a petition for postconviction relief alleging ineffective assistance of counsel, the petitioner must submit evidentiary documents containing sufficient operative facts to demonstrate both the lack of competent counsel and that the defense was prejudiced by counsel's ineffectiveness. (Emphasis

added.) *State v. Jackson*, 64 Ohio St.2d 107, 413 N.E.2d 819 (1980), syllabus *See also State v. Cole*, 2 Ohio St.3d 112, 114, 443 N.E.2d 169 (1982) ("Where ineffective assistance of counsel is alleged in a petition for postconviction relief, the defendant, in order to secure a hearing on his petition, must proffer evidence which, if believed, would establish not only that his trial counsel had substantially violated at least one of a defense attorney's essential duties to his client but also that said violation was prejudicial to the defendant").

{¶21} "New" evidence attached to the petition does not automatically defeat the res judicata bar. Rather, evidence outside the record must meet "some threshold standard of cogency; otherwise it would be too easy to defeat the holding of *Perry* by simply attaching as exhibits evidence which is only marginally significant and does not advance the petitioner's claim[.]" *State v. Lawson*, 103 Ohio App.3d 307, 315, 659 N.E.2d 362 (1995), quoting *State v. Coleman*, 1st Dist. No. C-900811, 1993 Ohio App. LEXIS 1485 (Mar. 17, 1993). Moreover, the evidence dehors the record must not be evidence which was in existence and available for use at the time of trial and which could and should have been submitted at trial if the defendant wished to use it. *Dowell*, 8th Dist. No. 86232, 2006-Ohio-110, ¶ 10.

{¶22} In this case, Williams provided nothing to the trial court to warrant an evidentiary hearing. All of his assertions about his trial counsel's alleged lack of effort on his behalf were ones that were, or could have been, presented in *Williams I*. Indeed, in *Williams I*, this court discussed the issues Williams presented in his petition and found

that: (1) trial counsel's decision to forgo presenting evidence of Williams's alleged alibi was a tactical decision, (2) in light of the facts that the victim knew Williams and looked at him directly during the incident, but his girlfriend did not and had not, preservation of the photo arrays would not have changed the outcome of trial, and (3) Williams waived his right to a jury, a decision that was placed on the record.

{¶23} In addition, Williams attached no competent evidence to support his claim that his trial counsel provided ineffective assistance. His affidavit was general and conclusory, and none of the documents he provided was either verified or authenticated. *See State v. Richmond*, 8th Dist. No. 97616, 2012-Ohio-2511, ¶ 10-12. At any event, even if Williams's documents were deemed of evidentiary quality, none established his claim and all were in existence at the time of trial.

{¶24} Based upon the foregoing, Williams's first and second assignments of error are overruled.

{¶25} The argument Williams raises in his third assignment of error has been addressed by this court in *State v. Bradley*, 8th Dist. No. 90290, 2008-Ohio-3536 as follows:

> Bradley argues that the trial court improperly dismissed his petition for reasons other than res judicata without making findings of fact and conclusions of law. He argues that the trial court never engaged in personal fact-finding as required by R.C. 2953.21 because it adopted the State's proposed findings * * * .

> Civ.R. 52 provide[s] that it is within the trial court's discretion to "require any or all of the parties to submit proposed findings of fact and conclusions of law." Moreover, this court has previously held that: "[i]n the absence of demonstrated prejudice, it is not erroneous for the trial court to adopt, in verbatim form, findings of fact and conclusions

of law which are submitted by the state." *State v. Thomas*, Cuyahoga App. No. 87666, 2006 Ohio 6588, citing *State v. Powell* (1993), 90 Ohio App.3d 260, 263, 629 N.E.2d 13; *State v. Sowell* (1991), 73 Ohio App.3d 672, 676, 598 N.E.2d 136.

"A trial court may adopt verbatim a party's proposed findings of fact and conclusions of law as its own if it has thoroughly read the document to ensure that it is completely accurate in fact and law." *Thomas*, citing *State v. Jester*, Cuyahoga App. No. 83520, 2004 Ohio 3611. Thus, "the trial court's adoption of the findings of fact and conclusions of law submitted by the state does not, by itself, deprive the petitioner of a meaningful review of his petition for postconviction relief and does not constitute error * * * ." *State v. Powell* (1993), 90 Ohio App.3d 260, 629 N.E.2d 13.

{¶26} Similarly, nothing in this case indicates that the trial court did not review the record and the materials submitted before adopting the state's proposed findings of fact and conclusions of law. The trial judge was the same one who had presided over Williams's trial, so he was familiar with Williams's demeanor when waiving the right to a jury trial, the manner in which trial counsel conducted the defense, the evidence of Williams's guilt, and the accuracy of the state's proposed facts. Additionally, the state applied the appropriate legal analysis to the facts presented. Under these circumstances, the trial court did not abuse its discretion in adopting the state's proposed findings of fact and conclusions of law.

{¶27} Williams's third assignment of error is also overruled.

{¶28} The trial court's order is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KENNETH A. ROCCO, PRESIDING JUDGE

PATRICIA A. BLACKMON, J., and
EILEEN T. GALLAGHER, J., CONCUR