[Cite as *State v. Bonnell*, 2019-Ohio-5342.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :

    v.                           :

MELVIN BONNELL,                         :

    Defendant-Appellant.         :

No. 108209

———

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** December 26, 2019

———

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-87-223820-ZA

———

### *Appearances:*

Micahel C. O'Malley, Cuyahoga County Prosecuting Attorney, and Christopher D. Schroeder, Assistant Prosecuting Attorney, *for appellee.*

Timothy Young, Ohio Public Defender, and Kimberly S. Rigby and Erika M. Lahote, Assistant State Public Defenders, *for appellant.*

LARRY A. JONES, SR., J.:

{¶ 1} In 1988, defendant-appellant Melvin Bonnell ("Bonnell") was sentenced to death after a jury found him guilty of two counts of the aggravated murder of Robert Bunner ("Bunner") with felony murder and firearm specifications,

one count of aggravated burglary with firearm and aggravated felony specifications, and recommended a death sentence to the trial court.

{¶ 2} In the years since, as will be set forth below, Bonnell has been challenging his convictions and sentence, without success. The record shows (and has been conceded by the state through the years) that some evidence from the crime scene was either not collected or preserved, including blood droppings from the back porch and its railing; vomit located near Bunner's body; certain fingerprints; substances on Bonnell's hands; the contents of Bonnell's car; and some of the clothes Bonnell was wearing on the night of the murder. The failure to collect and preserve the evidence has been a central challenge made by Bonnell throughout the years.

{¶ 3} Relative to this appeal, in January 2018, Bonnell filed a motion for leave to file a motion for a new trial, contending that he had new evidence. In January 2019, the trial court denied his motion for leave without a hearing, and adopted plaintiff-appellee's, the state of Ohio, unopposed proposed findings of fact and conclusions of law. For the reasons that follow, we affirm the trial court's judgment.

**Factual Background**

{¶ 4} The following facts are summarized from the direct appeal, *State v. Bonnell*, 8th Dist. Cuyahoga No. 55927, 1989 Ohio App. LEXIS 4982 (Oct. 5, 1989).

{¶ 5} As mentioned, the victim was Bunner. He lived with Ed Birmingham ("Birmingham") and Shirley Hatch ("Hatch") in the upstairs portion of an apartment on Bridge Avenue in Cleveland. On November 27, 1986, Bunner,

Birmingham, and Hatch began drinking in their apartment at noon. Bunner and Hatch continued drinking into the early morning hours of the following day; Birmingham, who was intoxicated, went to bed at 8:30 p.m. *Id.* at 2.

{¶ 6} At approximately 3:00 a.m., on November 28, Hatch heard a knock on the back door. She looked through the peephole on the door, but could not identify who was there; the person outside identified himself as "Charlie." Hatch then asked Bunner to help; Bunner opened the door. *Id.*

{¶ 7} When Bunner opened the door, Hatch saw Bonnell standing there with his hands in his coat pocket. Bonnell walked into the kitchen, uttered an expletive, and fired twice at Bunner at close range. Hatch testified that Bonnell then turned to her, but she was able to run to Birmingham's bedroom. *Bonnell*, 8th Dist. Cuyahoga No. 55927, 1989 Ohio App. LEXIS 4982.

{¶ 8} Hatch woke Birmingham up, and Birmingham went into the kitchen where he saw Bonnell sitting on top of Bunner and striking him repeatedly in the face. *Id.* at 2-3. Birmingham intervened, pulling Bonnell off Bunner; Birmingham then threw Bonnell out the door and down the back steps. Hatch called the police. *Id.* at 3.

{¶ 9} Two of the downstairs tenants testified at trial. They heard a commotion at the time in question, and at about the same time they heard the commotion, they also heard what they believed was someone falling heavily to the floor. One of them also testified that it sounded like someone had fallen down the back steps. The neighbors testified that they did not see a car, but heard the sound

of car wheels "squealing." Immediately after hearing the "squealing," one of the neighbors saw a police car with its lights on pass by the apartment. *Id.*

{¶ 10} Meanwhile, two Cleveland police officers were patrolling on Bridge Avenue when, at approximately 3:40 a.m., they saw a blue Chevrolet without headlights on travelling backward on the street. The police attempted to stop the car, but the driver, later identified as Bonnell, sped away and a chase ensued. Bonnell eventually crashed into a funeral home. *Bonnell*, 8th Dist. Cuyahoga No. 55927, 1989 Ohio App. LEXIS 4982.

{¶ 11} One of the officers at the crash scene received an emergency call about the murder at the apartment and left to respond to that scene. Upon arriving at the scene, the officer got a description of the assailant and realized that it matched the person who had crashed the blue Chevrolet into the funeral home, that is, Bonnell. Bonnell was transported to the hospital, where Birmingham identified him as the assailant. *Id.* at 3-4.

{¶ 12} The police searched the crash area and found a .25 automatic pistol. Test firings of the pistol revealed that it fired the bullets that were removed from Bunner's body. *Id.* at 4.

{¶ 13} Bonnell presented witnesses on his behalf. The witnesses corroborated a statement Bonnell had made to the police, that on the day of the incident, he had been out drinking with a friend, Joe Popil. In his statement, Bonnell maintained that Popil owned the gun and was driving the blue Chevrolet. According to Bonnell, Popil stopped at the Bridge Avenue address and entered the apartment

alone with the weapon. When Popil returned to the car, he put the gun in the glove compartment. Bonnell stated that he (Bonnell) passed out from the drinking and did not remember anything thereafter until he woke up in the hospital. According to Popil, he had been out with Bonnell, but he maintained that he was driven home at 11:30 p.m., whereupon he got sick from drinking. *Bonnell*, 8th Dist. Cuyahoga No. 55927, 1989 Ohio App. LEXIS 4982 (Oct. 5, 1989).

**Procedural History**

{¶ 14} As mentioned, this case has been extensively litigated in the years since Bonnell was convicted and sentenced. The following is a summation of the prior history.

Direct Appeal

{¶ 15} In his direct appeal to this court, Bonnell raised 30 assignments of error challenging his convictions and sentence. The alleged errors included challenges to the sufficiency and weight of the evidence, allegations that the state failed to provide exculpatory or favorable evidence prior to trial, and an allegation that the trial court erred by denying his motion to suppress an unnecessarily suggestive line-up. This court found the alleged errors, with the exception of one, without merit and affirmed the convictions but remanded for resentencing solely on the aggravated burglary conviction. *Id.* at 42.

Appeal to Ohio Supreme Court

{¶ 16} Bonnell appealed to the Ohio Supreme Court, where he presented 29 propositions of law. The court found the "evidence of [Bonnell's] guilt to be overwhelming," and affirmed his convictions and sentence. *State v. Bonnell*, 61 Ohio St.3d 179, 183, 187, 573 N.E.2d 1082 (1991).

Attempted Appeal to United States Supreme Court

{¶ 17} Bonnell attempted to appeal to the United States Supreme Court, but the court denied his petition for a writ of certiorari. *Bonnell v. Ohio*, 502 U.S. 1107, 112 S.Ct. 1205, 117 L.Ed.2d 444 (1992).

*Murnahan*

{¶ 18} In November 1992, Bonnell filed an application in this court for delayed reconsideration pursuant to *State v. Murnahan*, 63 Ohio St.3d 60, 584 N.E.2d 1204 (1992). In his application, he alleged that 55 acts and omissions by his appellate counsel rendered counsel ineffective. His application sought relief based on claims, among others, that the state's identification witnesses were tainted, some of the state's witnesses' testimony was unreliable and inaccurate, and the state failed to provide timely discovery.

{¶ 19} In May 1994, this court denied Bonnell's application. *State v. Bonnell*, 8th Dist. Cuyahoga No. 55927, *see* Motion No. 248402. Bonnell appealed to the Ohio Supreme Court, which affirmed this court, *State v. Bonnell*, 71 Ohio St.3d

223, 643 N.E.2d 108 (1994), and denied Bonnell's request for reconsideration. *State v. Bonnell*, 71 Ohio St.3d 1459, 644 N.E.2d 1031 (1995).

Postconviction Proceedings

{¶ 20} In 1995, Bonnell filed a postconviction petition in the trial court. In the petition, he claimed 53 grounds on which he sought relief, much of which revolved around his contention that the state suppressed exculpatory evidence, either by failing to collect it from the crime scene or failing to preserve what it had collected; the petition included over 500 pages of supporting information. The evidence at issue was blood samples, vomit, fingerprints, and other miscellaneous materials.

{¶ 21} The state acknowledged that the evidence Bonnell sought had not been preserved, but maintained that Bonnell's rights had not been violated. The trial court denied the petition without a hearing. The trial court found that Bonnell failed to establish that there was a due process violation in the lack of preservation of the evidence because he failed to show that the state acted in bad faith. Bonnell appealed to this court, and in August 1998, this court affirmed the trial court's judgment denying his petition. *State v. Bonnell*, 8th Dist. Cuyahoga Nos. 69835 and 73177, 1998 Ohio App. LEXIS 3943 (Aug. 27, 1998). This court found,

> The fact that blood was found on the back porch hand railing and on a green pillow on the back porch is not material. Birmingham had testified that he witnessed [Bonnell] punching the victim and that blood was all over the place. He then picked up [Bonnell] and threw him out of the back door onto the back porch. It is conceivable that the blood was transferred to these areas by [Bonnell]. Therefore, since

there is no reasonable probability that this evidence would have affected the outcome of the trial, it was not material.

*Id.* at 17. The United States Supreme Court denied certiorari in October 1999. *Bonnell v. Ohio*, 528 U.S. 842, 120 S.Ct. 111, 145 L.Ed.2d 94 (1999).

Habeas Corpus

{¶ 22} In March 2000, Bonnell filed a petition for writ of habeas corpus in the United States District Court for the Northern District of Ohio. He claimed 20 areas of alleged constitutional violations, including the state's suppression of exculpatory evidence, the state's failure to preserve exculpatory evidence from the crime scene, the trial court's failure to suppress the unnecessarily suggestive lineup, and he challenged the sufficiency of the evidence. The district court denied Bonnell's petition. *Bonnell v. Mitchell*, 301 F.Supp.2d 698 (N.D.Ohio 2004). The Sixth Circuit Court of Appeals affirmed the district court. *Bonnell v. Mitchell*, 212 Fed.Appx. 517 (6th Cir.2007).

2004 Application for DNA Testing

{¶ 23} In October 2004, Bonnell filed an application for DNA testing of the following items: vomit from the kitchen; blood from Bonnell's car; hairs on a green pillow; bags that were placed over his hands at the hospital (to determine if the bags contained gunshot residue); blood from the back stairs, stairwell, and railing; and testing of any swabs or stains taken from Bonnell's hands.

{¶ 24} The state opposed Bonnell's application and also, in accordance with R.C. 2953.75(B),[1] filed a report, in which it again acknowledged that, despite a search, it was "unable to locate any of the items defendant has requested to be tested." The state further noted, "[i]ndeed, as the State's objection to DNA testing details, Bonnell has argued, and the Courts have recognized for the past ten years that this evidence does not exist." The trial court denied the application, finding that none of the materials Bonnell sought to have tested existed.

2008 Application for DNA Testing

{¶ 25} In February 2008, Bonnell filed a second application for DNA testing. In addition to the items he sought testing on in his 2004 application, he added to his request testing for blood on the jacket and other clothes he was wearing at the time in question, and one or two guns recovered by the Cleveland police. Bonnell contended that the testing on the jacket "may pinpoint the actual killer." In his application, Bonnell stated that "there is no reason to believe that the evidence has been contaminated or tampered with while in the State's possession and control."

{¶ 26} The jacket had been lost, but in April 2008, the state informed the trial court that it had located the jacket in this court's clerk of court files. The parties then filed a joint motion for DNA testing, which the trial court granted. The jacket was sent to an agreed-upon independent testing agency, the DNA Diagnostic Center

---

[1]R.C. 2953.75 is titled "determinations by prosecuting attorney as to whether biological material was collected and whether parent sample still exists." Subsection (B) requires the state to prepare a report with its determinations.

in Fairfield, Ohio. The results of the testing revealed that Bunner's blood was on Bonnell's jacket in five different places.

Bonnell's 2017 Motion for Accounting of Physical Evidence

{¶ 27} In April 2017, Bonnell filed a motion to compel the state to provide an accounting of the physical evidence in the case; he sought more DNA testing on other evidence. Pursuant to his request, the state filed another report under R.C. 2953.74(B), documenting its efforts to find biological material that could possibly be DNA tested. The assistant prosecuting attorney handling the matter submitted an affidavit averring to his efforts searching for evidence. In short, except for Bonnell's jacket, which as mentioned had been DNA tested pursuant to Bonnell's 2008 application, the other evidence either could not be located and/or it appeared to have not been preserved.

{¶ 28} In August 2017, the trial court denied Bonnell's second request for DNA testing. The court found the state's search adequate, but that despite the search, no other evidence existed. Moreover, the court found that even if any biological material did exist, Bonnell could not show that any additional DNA testing would be outcome-determinative. The Ohio Supreme Court upheld the trial court's decision, *State v. Bonnell*, 155 Ohio St.3d 176, 2018-Ohio-4069, 119 N.E.3d 1285, and denied Bonnell's motion for reconsideration, *State v. Bonnell*, 113 N.E.3d 554, 2018-Ohio-4962. The United States Supreme Court denied certiorari. *Bonnell v. Ohio*, 139 S.Ct. 2644, 204 L.Ed.2d 289 (2019).

<u>Judgment at Issue Here: Bonnell's 2018 Motion for Leave to File a Motion for New Trial</u>

{¶ 29} Meanwhile, in January 2018, Bonnell filed a motion for leave to file a motion for a new trial in the trial court. In his motion, he contended that the state's 2017 R.C. 2953.74(B) report gave rise to a renewed failure to preserve evidence claim under *Arizona v. Youngblood*, 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988). He also submitted a 2017 affidavit from eyewitness Hatch, which Bonnell contended raised discrepancies that should cast doubt on the convictions; the affidavit was not a recantation of her trial testimony, however. As stated, the trial court denied the motion for leave. The state submitted proposed findings of fact and conclusions of law; Bonnell neither submitted his own proposed findings of fact and conclusions of law, nor did he oppose the state's submission. The trial court adopted the state's findings of fact and conclusions of law.

{¶ 30} Bonnell now appeals, raising the following four assignments of error:

I. The trial court abused its discretion when it failed to invoke a due process analysis and grant Bonnell's motion for leave to file a motion for new trial or hold a hearing when the issues Bonnell raised in his motion for leave to file a motion for new trial and in the accompanying motion for new trial demonstrated violations of his right to due process.

II. The trial court abused its discretion when it denied Bonnell's motion for leave to file a motion for a new trial when the record demonstrated by clear and convincing proof that Bonnell was unavoidably prevented from discovering the evidence within 120 days of his conviction.

III. The trial court abused its discretion when it denied Bonnell's motion for leave to file a motion for a new trial when the newly discovered evidence Bonnell submitted establishes substantive grounds which require a new trial.

IV. The trial court deprived Bonnell of meaningful review of his motion for leave to file a motion for new trial where, after previously adopting erroneous findings, it once again delegated its judicial function to the State and adopted verbatim erroneous proposed findings of fact and conclusions of law.

{¶ 31} Based on these alleged errors, Bonnell seeks a reversal and remand to the trial court with instructions to (1) grant his motion for leave and permit him to file his motion for a new trial, or (2) alternatively, hold a hearing on his motion for leave, or (3) alternatively, revise its findings of fact and conclusions of law.

{¶ 32} We note that much of Bonnell's arguments in his brief relate to the substantive grounds of his request for a new trial. The judgment at issue here was the denial of his motion for leave to file a motion for a new trial. The motion for leave is addressed in Bonnell's second assignment of error; we consider that error first.[2]

---

[2]*See, e.g.*, *State v. Phillips*, 8th Dist. Cuyahoga No. 104810, 2017-Ohio-7164, ¶ 23, where this court, in considering a judgment denying the defendant's motion for leave to file a motion for a new trial stated that,

> Although the state argues on appeal that no *Brady* violation actually occurred, its argument puts the proverbial cart before the horse. The proper place for that discussion is the new trial motion itself — if the court grants leave to file the motion [after a hearing on remand]. At this point in the proceedings, it does not matter whether a *Brady* violation did occur, what matters is whether [the defendant] can show by clear and convincing evidence that he was unavoidably prevented from discovering the potential violation during trial and the 120 days following.

**Law and Analysis**

Untimely Motion

{¶ 33} For his second assigned error, Bonnell contends that the trial court abused its discretion by finding that he failed to show that he was unavoidably prevented from timely discovering the grounds for his motion for a new trial. The "new evidence" Bonnell contends he was unavoidably prevented from discovering was the state's 2017 R.C. 2953.75(B) "newly discovered" report and "new statements" made by Hatch in her 2017 affidavit.

{¶ 34} Crim.R. 33 governs motions for new trials and provides that motions for new trials based on account of newly discovered evidence must be filed within 120 days of a jury verdict unless the petitioner demonstrates by clear and convincing proof that he or she was unavoidably prevented from discovering the evidence upon which he or she must rely. Crim.R. 33(B).

{¶ 35} A person is unavoidably prevented from discovering evidence if the person had no knowledge of the existence of the grounds supporting the motion and could not have learned of the existence in the exercise of reasonable diligence within the time prescribed by the rule. *Phillips*, 8th Dist. Cuyahoga No. 104810, 2014-Ohio-7164, at ¶ 16. Clear and convincing proof

> is that measure or degree of proof [that] is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" * * * and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.

*Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶ 36} If a petitioner fails to meet this burden, "[r]es judicata bars all subsequent motions seeking a new trial that are based on claims that were brought or could have been brought on direct appeal or in prior motions filed under Crim.R. 33." *State v. Blalock*, 8th Dist. Cuyahoga No. 104773, 2017-Ohio-2658, ¶ 36.

{¶ 37} The trial court has sound discretion on whether to grant an evidentiary hearing on a defendant's request for leave to file a delayed motion for new trial; we will not disturb the decision absent an abuse of that discretion. *State v. Hill*, 8th Dist. Cuyahoga No. 102083, 2015-Ohio-1652, ¶ 16.

{¶ 38} The extensive record in this case is replete with evidence that Bonnell had been aware well before the state's 2017 R.C. 2953.75(B) report of the state of the evidence. That is, that the items he sought testing on did not exist. The record demonstrates that this was evident since at least 1995. The following illustrates this: (1) *Bonnell's March 1995 petition for postconviction relief*: he contended that the state failed to collect and/or preserve certain evidence from the crime scene, and in the state's May 1995 response to his petition, the state acknowledged that "blood samples, vomit, fingerprints, and other miscellaneous materials were not preserved"; (2) *trial court's October 1995 judgment denying his postconviction petition*: Bonnell failed to "show that the State acted in bad faith in not preserving the evidence in this case"; (3) *1998 appeal to this court of the denial of his postconviction petition*: Bonnell contended that the state "failed to preserve the

scene of the homicide and secure exculpatory evidence," and the state responded that his "rights were not violated if blood samples, vomit, fingerprints, and other miscellaneous materials were not preserved"; (4) *Bonnell's 2000 habeas petition*: Bonnell contended that the state "failed to preserve exculpatory evidence from the crime scene," and in its decision, the federal district court held that he "failed to establish that the unpreserved or untested evidence is exculpatory"; and (5) *state's 2005 R.C. 2953.75(B) report*: the state maintained that "Bonnell has argued, and the Courts have recognized for the past ten years that this evidence [Bonnell seeks testing on] does not exist," and the trial court agreed in denying his request.

{¶ 39} We are not persuaded by Bonnell's insinuation that destruction or nonpreservation of evidence in this case was merely a claim he made, without knowledge of whether that was actually true. The above-mentioned details that he was made aware that the evidence he sought did not exist. The state's 2017 R.C. 2953.75(B) report did not disclose anything "new"; rather, it reiterated what had been a centerpiece of much of the litigation in this case dating back to 1995 — the evidence Bonnell sought did not exist.[3]

{¶ 40} We are likewise not persuaded by Bonnell's contention that Shirley Hatch's 2017 affidavit constituted newly discovered evidence that he was unavoidably prevented from discovering. Bonnell contends that he was unable to

---

[3]Further, any contention Bonnell has regarding the adequacy of the state's search for the evidence he sought testing on vis-à-vis the testing on his jacket under his 2008 application for testing is misleading. Specifically, he had not previously requested testing on the jacket. When he did, the state searched for the jacket, found it, and agreed to testing, which revealed Bunner's blood in five different places.

find Hatch sooner because she moved out of state and changed her last name. However, the state was able to find Hatch several years earlier through a public records search on Lexis. Moreover, Bonnell did not set forth in his motion what efforts he made to find Hatch sooner.

{¶ 41} In *State v. Moore*, 7th Dist. Mahoning No. 13 MA 9, 2014-Ohio-358, ¶ 24, the Seventh Appellate District held:

> Even though Moore has been incarcerated, he does not explain *how* he has been prevented from contacting the affiant, Butler Johnson. Indeed, it is unreasonable for Moore not to have attempted to contact Johnson sooner if he knew that Johnson and Elizabeth Williams had provided false testimony. Moore was present at his own trial where Johnson and Elizabeth Williams presumably testified. If he genuinely knew Johnson's or William's testimony to be false, he should have known that at the time of their testimony. Consequently, it was upon Moore to exercise reasonable diligence to make efforts to obtain an affidavit from one of them establishing the fact of their false testimony and the reasons for it a lot sooner than fifteen years following his conviction. In other words, Moore did have knowledge of the existence of the ground supporting the motion from the time of his trial and, although he was incarcerated, he could have contacted the witnesses himself or through representatives and investigated the nature of the alleged false testimony and the reasons behind it.

(Emphasis sic.)

{¶ 42} Like the defendant in *Moore*, Bonnell has not set forth an adequate explanation as to why it took him 30 years to find Hatch. On this record, therefore, the trial court properly found that Bonnell failed to show that he was unavoidably prevented from discovering Hatch's affidavit.

{¶ 43} Moreover, both of Bonnell's grounds on which his request for leave were based — that "new evidence" showed that the state failed to preserve evidence

and Hatch provided "new evidence" in her affidavit — have already been litigated and are, therefore, barred under the doctrine of res judicata. Under res judicata, a defendant is barred from raising an issue in a postconviction relief petition if he or she raised, or could have raised, the issue at trial or on direct appeal. *State v. Cody*, 8th Dist. Cuyahoga No. 102213, 2015-Ohio-2764, ¶ 16.

{¶ 44} We have already set forth the prior rulings by the courts regarding the state's failure to preserve evidence. In regard to Hatch, on direct appeal this court considered the alleged inconsistencies in her testimony, finding that "[m]inor inconsistencies which may impeach the accuracy of a witness' recollection of a drunken traumatic episode do not warrant grounds for overturning a murder verdict." *Bonnell*, 8th Dist. Cuyahoga Nos. 69835 and 73177, 1998 Ohio App. LEXIS 3943, 13 (Aug. 27, 1998). "The defendant's list of other minutiae to which Hatch inconsistently testified amounted to immaterial details surrounding the event. As stated before, even a cursory review of the evidence displays its immateriality." *Id.* at 16. Bonnell continued to raise this claim in his 1995 postconviction relief petition, federal habeas litigation, and 2018 appeal to the Ohio Supreme Court. It has been rejected at every turn. Hatch's averments in her affidavit are not a recantation. They deal with inconsistencies in her trial testimony vis-à-vis her current recollection of events — inconsistencies that have been determined to be "immaterial."

{¶ 45} In light of the above, Bonnell has failed to establish by clear and convincing evidence that he was unavoidably prevented from discovering the evidence upon which his motion for leave was based. There was no abuse in the trial

court's decision to not have a hearing. The second assignment of error is therefore not well taken.

Adoption of State's Proposed Findings of Fact and Conclusions of Law

{¶ 46} In his fourth assignment of error, Bonnell challenges the trial court's adoption of the state's proposed findings of fact and conclusions of law. We note that Bonnell did not file his own proposed findings of fact and conclusions of law, nor did he object to the state's submission.

{¶ 47} "A trial court does not err when it adopts a party's proposed findings of fact and conclusions of law as its own if it has thoroughly read the document to ensure that it is completely accurate in fact and law." *Cody*, 8th Dist. Cuyahoga No. 102213, 2015-Ohio-2764, at ¶ 37, citing *State v. Williams*, 8th Dist. Cuyahoga No. 99357, 2013-Ohio-2706, and *State v. Thomas*, 8th Dist. Cuyahoga No. 87666, 2006-Ohio-6588. Thus, when a trial court adopts proposed findings of fact and conclusions of law verbatim, the findings and conclusions are those of the court and may be reversed only if they are clearly erroneous. *Anderson v. Bessemer City*, 470 U.S. 564, 572, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); *Cody* at *id.*

{¶ 48} Upon review, we find no error in the trial court's adoption of the state's proposed findings of fact and conclusions of law. Bonnell has not demonstrated that the trial court failed to review the record and the documentation submitted in support of his motion for leave. Further, the trial court judge who considered his motion for leave was the same judge who considered his 1995 petition for postconviction relief and both of the applications for DNA testing and, therefore,

presumably was familiar with the case. Our review of the findings and conclusions does not show that they are "clearly erroneous."

{¶ 49} In light of the above, Bonnell's fourth assignment of error is overruled.

{¶ 50} The second and fourth assignments of error are dispositive of the appeal, and we decline to consider the remaining assignments. *See* App.R. 12(A)(1)(c).

{¶ 51} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LARRY A. JONES, SR., JUDGE

EILEEN T. GALLAGHER, P.J., and
FRANK D. CELEBREZZE, JR., J., CONCUR